7 P.(2d) 292

**WELCH v. McDONALD, County Sheriff.\***

No. 3742.

Supreme Court of New Mexico.

Dec. 28, 1931.

\*Rehearing denied.

not less than 40 years nor more than 90 years. Petitioner appealed from the judgment and applied to the district court for bail pending the disposition of the appeal by this court. Bail was denied, and petitioner applied to this court by habeas corpus proceedings to obtain bail.

We made an order admitting the petitioner to bail. The Attorney General filed a motion for rehearing.

 Counsel for petitioner relied upon the provisions of section 105-2532, Comp. 1929, a portion of which is as follows: "Whenever the sentence of the district court shall be that of death or imprisonment for life, the party convicted shall remain in close confinement until the decision of the supreme court shall be pronounced; in all other cases the party taking the appeal or suing out the writ of error shall be entitled to be released on bail," etc.

He argues that a sentence for a term of not less than 40 nor more than 90 years is not one of "imprisonment for life." We are in agreement with him.

There are two crimes under the statutes of New Mexico for which the punishment is stated specifically to be imprisonment for life. One is of carnally knowing and abusing a female child under the age of ten years, section 35-803, Comp. 1929, and bank robbery by use of a firearm or other deadly weapon, section 35-706, Comp. 1929. The legislative mandate to the judge imposing a sentence after conviction for these two crimes is plain. In case of bank robbery, by use of a deadly

Caswell S. Neal, of Carlsbad, G. A. Threlkeld, of Roswell, and Carl A. Hatch, of Clovis, for petitioner.

E. K. Neumann, Atty. Gen., for respondent.

BICKLEY, C. J.

Petitioner was convicted of murder in the second degree, and sentenced to imprisonment in the penitentiary for a period of time

weapon, it is emphasized. It is provided by that statute that, if the robbery is not accomplished by the display of a deadly weapon, the punishment shall be imprisonment in the penitentiary for not more than 50 years and not less than 5 years. Under section 35-703, Comp. 1929, a bank robbery committed under certain circumstances is punishable by imprisonment in the penitentiary for "not less than five nor more than ninety-nine years, in the discretion of the court." But in case of bank robbery committed under certain circumstances, and rape of a child, the Legislature has declared the policy that the offender shall be imprisoned for life, and no discretion in the district judge to impinge upon such policy has been recognized. In State v. Brigance, 31 N. M. 436, 246 P. 897, 899, we suggested that in the case of the rape of a child, "the punishment for which is definitely fixed by statute," it would not be appropriate for the court to instruct the jury that it had a right to recommend clemency. It would seem that in these two instances the legislative intent is that imprisonment for life shall be in the exact terms of the statute, and that section 130-163, Comp. 1929, which provides that the court in imposing sentence shall fix the maximum and minimum duration of the same, has no application. It seems clear that, where a person is sentenced to imprisonment for life, death would mark the maximum duration of his imprisonment, but who could say what would be the minimum duration thereof?

So, if the court has imposed a sentence in exact words of "imprisonment for life," the sentence itself manifests the intention of the judge and precludes bail pending appeal.

The difficulty arises because of what was said in Ex parte Parks, 24 N. M. 491, 174 P. 206, 207, holding that a sentence of from 90 to 99 years was a sentence for life. In that case the court took judicial notice that a period of time of from 90 to 99 years is beyond the ordinary period of life of any person, regardless of his present age or physical condition. The court went on to say: "Petitioners argue that the provisions of the statute for 'good time' to be allowed convicts in case of exemplary conduct become a part of the sentence, and necessarily reduce the length of the term of actual confinement. The conclusion is drawn that these petitioners may not be required to serve any very considerable part of the term by reason of those provisions. We do not deem those provisions to have any application to the question here. The question is whether the sentence now is one of imprisonment for life. Whether petitioners, by good conduct, may hereafter shorten the term of imprisonment would seem to be entirely immaterial."

We are now convinced that the argument in the Parks Case is faulty as applied to the bail statute; the court then not having before it the contention and argument now presented.

"Imprisonment for life" means a definite term fixed by the natural existence of the prisoner. It means that he shall be imprisoned until he dies. There is no ambiguity in the words "imprisonment for life" as used in

the bail statute, and the intent of the Legislature could not be more clearly expressed. Where there is no ambiguity in the statute, there is no occasion for construction. Atlantic Oil Producing Co. v. Crile, 34 N. M. 650, 287 P. 696.

If the sentence is imprisonment in the penitentiary for a minimum term or a maximum term, we see no reason why the prisoner is not entitled to the benefit of the parole and good time statutes, regardless of the length of such minimum and maximum terms. The very statute which requires the court in imposing sentence to fix the maximum and minimum duration of the same outlines circumstances and procedure under which the prisoner, after having served the minimum term of his sentence, may go upon parole outside the prison building and inclosure, and, when he has served not less than six months of his time acceptably, may secure his final discharge. In addition to this, the "good time" statutes are taken into consideration, so that, according to the practice prevailing, of which we take notice, the language of the parole statute, "after having served the minimum term of his sentence," is construed to mean that the prisoner is eligible to parole after having served the minimum term of his sentence, less deductions for good behavior as provided by statute for such deductions. So, from information before us, as to the operation of the "good time" statute under conditions most favorable to the prisoner, a prisoner sentenced to imprisonment for from 40 to 90 years might secure his release in 16 years and 6 months, and, if he did not secure a parole, good behavior would make him eligible to discharge in 36 years and 5 months computed upon the basis of the 90-year period.

We do not believe that it was the intention of the Legislature that the bail statute which precludes bail where the sentence of the court shall be "imprisonment for life" should leave open to speculation whether under the indeterminate sentence statute a prisoner is sentenced to a maximum and minimum term which on the face thereof would be equivalent to the ordinary period of life, yet which might under some circumstances be reduced to such a period of time as would be well within the ordinary span of life.

It would seem upon sound reason that any prisoner sentenced to "imprisonment for life" is excluded from the provisions of the deductions from sentence for good behavior acts of the Legislature, for the reason that such a one acquired no legal rights under such statutes, as the length of the sentence cannot be determined until the death of the prisoner, and the same is, therefore, not an indeterminate period of time. In Ex parte Collins, 94 Mo. 22, 6 S. W. 345, the Missouri Supreme Court held that a statute providing that a prisoner was eligible to discharge who had acceptably served three-fourths of the time for which he was sentenced could not be related to or be operative in a case of one sentenced for life.

It is manifest that it could not be known when a prisoner had served three-fourths of his sentence of "imprisonment for life."

In People v. Finley, 153 Cal. 59, 94 P. 248, 249, affirmed 222 U. S. 28, 32 S. Ct. 13, 56 L. Ed. 75, the California Supreme Court, considering a question involving the distinction between imprisonment for life and for a term of years, said: "But there are valid reasons which justify the distinction. The 'life termers,' as has been said, while within the prison walls, constitute a class by themselves, a class recognized as such by penologists the world over. Their situation is legally different. Their civic death is perpetual. As to a convict incarcerated for a term of years, his civic death ends with his imprisonment. The good conduct laws, whereby the term of imprisonment is shortened as to all other convicts, have no application to those undergoing a life sentence. Generally speaking, the crimes for which convicts suffer life sentences are graver in their nature and give evidence of more abandoned and malignant hearts, than do the crimes of those undergoing sentence for years. And, finally, if the Legislature sought to make the law applicable to convicts, other than 'life termers,' the difficulty which it would experience in fixing the term of imprisonment to which it should apply gives evidence itself that there is a reasonable, rational class distinction between the 'life termer' and the convict under sentence for years."

In People v. Vitali, 156 Mich. 370, 120 N. W. 1003, 1004, the court said: "There could be no minimum sentence in case the life sentence were given."

In People v. Sama, 189 Cal. 153, 207 P. 893, the court decided: "Where the maximum sentence that could be imposed is half of the sentence for life, which is obviously impossible of ascertainment, the Indeterminate Sentence Law, which can be sustained only as an imposition of the maximum sentence, cannot apply," and quoted from an earlier decision, People v. Burns, 138 Cal. 159, 69 P. 16, 70 P. 1087, 60 L. R. A. 270:

"What the actual life of a particular person would be, and what would be the half of it, cannot be known; and if one-half of the life of the appellant were the only punishment prescribed for the crime of which he was convicted, such punishment would be too vague and indefinite to be possible of enforcement, and no judgment could be rendered against him."

The Michigan Supreme Court in People v. Dumas, 161 Mich. 45, 125 N. W. 766, decided: "A sentence * * * for life is sufficient without fixing a minimum term under the indeterminate sentence law."

And in Re Hamilton, 188 Mich. 499, 154 N. W. 567, 568, the court said: "It is obvious that no minimum term of imprisonment can be fixed which shall be one-half of a life term, and that therefore, 'there could be no minimum sentence in case the life sentence were given.' "

And in Re Smith, 212 Mich. 78, 179 N. W. 346, the court decided: "In the case of a sentence for life the indeterminate sentence law * * * is not applicable."

Section 13 of article 2 of our Constitution declares: "All persons shall be bailable by

sufficient sureties, except for capital offenses when the proof is evident or the presumption great. Excessive bail shall not be required. * * *"

It may be greatly doubted whether these provisions apply to instances subsequent to conviction and sentence, but, nevertheless, they manifest hospitality toward bail, and we think that, even if the bail statute were ambiguous, a construction would be required which would operate in favor of such liberty as may not be specifically denied by the bail statute.

Early statutes preclude bail pending appeal, whenever the sentence "be that of death or for imprisonment for one or more years" (section 2483, C. L. 1884; section 3420, C. L. 1897), and "whenever the sentence * * * shall be that of death or of imprisonment * * * exceeding five years, upon a conviction for murder" (section 2, chapter 32, Laws 1899, amending section 3420, C. L. 1897) and later (section 14, chapter 80, Laws 1899, amending section 3420, C. L. 1897) inserted the words "for imprisonment for life" in lieu of the former phrase "or imprisonment for one or more years," and section 1 of chapter 93, Laws 1901, amending section 3420, C. L. 1897, as amended by section 2, chapter 32, Laws 1899, by striking out "a term exceeding five years" and inserting in lieu thereof the word "life." We think those statutes emphasize the legislative intent that our present statute makes "imprisonment for life" an exception from bail pending on appeal, and not to include as nonbailable one

sentenced to a maximum and minimum term of years.

Ex parte Parks, supra, in so far as it conflicts herewith, is overruled.

From all of the foregoing, it appears that the motion for rehearing is properly denied.

WATSON, SADLER, PARKER, and HUDSPETH, JJ., concur.