885 P.2d 637

**Claude Ray BROOKS, Petitioner,**

v.

**John SHANKS, Warden, Respondent.**

No. 21699.

Supreme Court of New Mexico.

Oct. 26, 1994.

Tomita & Simpson, P.C., Elizabeth E. Simpson, Albuquerque, for petitioner.

Tom Udall, Atty. Gen., Anthony Tupler, Asst. Atty. Gen., Santa Fe, for respondent.

## OPINION

MONTGOMERY, Justice.

In this case we hold that the allegations in the inmate petitioner's petition for a writ of habeas corpus, in light of the respondent warden's response to the petition, were sufficient to require the district court to conduct an evidentiary hearing as contemplated by SCRA 1986, 5–802(E)(3) (Repl. Pamp.1992). In the process of so holding, we limit certain language in *State v. Aqui,* 104 N.M. 345, 721 P.2d 771, *cert. denied,* 479 U.S. 917, 107 S.Ct. 321, 93 L.Ed.2d 294 (1986), that may be, and has been, read to preclude judicial review of deprivations of a prisoner's so-called "good-time" credits, even though the deprivation may have been unlawful. We hold that NMSA 1978, Sections 33–2–34 and 33–2–36 (Repl.Pamp.1990), confer an entitlement to good-time credits and that this entitlement may be divested only when the statutory and administrative procedures relating to those credits have been followed.

In July 1993 Brooks filed a petition for a writ of habeas corpus pursuant to SCRA 5–802, alleging that he had been improperly denied good-time credits that should have accrued during the period December 1992 to March 1993.[1] At that time he was a prisoner

---

1. Although there are a number of types of good-time credits that a prisoner may accrue—and it appears that Brooks received some industrial good-time credits from December 1992 to March

718

in the Central Minimum Unit in Valencia County, New Mexico; now he is on parole.[2] Without conducting an evidentiary hearing, the trial court dismissed the petition in a two-paragraph order holding that Brooks "ha[d] no statutory basis for a 'right' " and that he "fail[ed] to present any legal basis that the policy of [the warden was] violative of due process or equal protection." Brooks sought review of this order in this Court by filing a petition for a writ of certiorari to the district court pursuant to SCRA 1986, 12–501 (Repl.Pamp.1992). We granted the petition and now reverse the trial court's order and remand the case for an evidentiary hearing.

## I.

The procedures governing forfeiture of good-time credits and termination of eligibility to earn good-time credits are found in two statutory provisions. The first, Subsection 33–2–34(C) ("Meritorious deductions"), governs termination of credit eligibility and provides that

> meritorious deductions may be terminated *upon recommendation of the classification committee and approval of the warden* if the inmate does not properly maintain the standard upon which the award was based; ... provided that after forfeiture of any portion of an inmate's accrued meritorious deductions, the remainder shall vest and shall not be subject to further forfeiture.[3] [Emphasis added.]

The other relevant section, Section 33–2–36 ("Forfeiture of earned deductions"), states

that "[a]ny accrued deductions may be forfeited by the convict for any major conduct violation upon the recommendation of the classification committee, approval by the warden and final approval by the secretary of corrections."

Brooks argues that he had a Fourteenth Amendment due process right to have his eligibility to earn good-time credits terminated only after the procedures set forth in these sections had been followed and that the manner in which his eligibility was terminated violated this right because the termination was effected without the classification committee's recommendation or the warden's approval. With tenuous support in the record, he makes the following allegations:[4]

In December 1992 the Department of Corrections Disciplinary Committee conducted an investigation and found Brooks guilty of major misconduct. The disciplinary officer responsible for the investigation recommended forfeiture of thirty days of good-time credits (which forfeiture is not challenged in these proceedings). Brooks maintains that he was never informed that the proceeding also contemplated termination of his eligibility to earn future good-time credits. The disciplinary officer's recommendation was then referred to the Institutional Reclassification Committee ("the IRC"), whose responsibilities included reviewing the Disciplinary Committee's decisions and determining whether the inmate should be transferred to a different facility. The IRC approved the recommended forfeiture of thirty days' good

1993—his claim is that he did not receive *meritorious* good-time credits during this period. Accordingly, when we speak of "good-time credits" in this opinion, we refer to the meritorious good-time credits that Brooks was allegedly denied.

2. If Brooks is successful in securing the good-time credits he seeks in this proceeding, his time on parole will be shortened.

3. This language applies to "inmates convicted of crimes committed prior to the effective date of this act." Subsection 33–2–34(C). According to his habeas petition, Brooks was convicted in March 1987 for a crime that must have been committed before that date and which would have been committed before May 18, 1988, the effective date of the Act. *See* 1988 N.M. Laws, ch. 78. Because Brooks was convicted prior to

the effective date of the Act, this statute applies to him.

4. Although we agree with the warden that the allegations Brooks made in his habeas petition did not articulate the legal issues on this appeal with the clarity we would expect from a licensed attorney, we are mindful of the difficulties that often face pro se inmates who attempt to tackle complex legal issues involved in their petitions for postconviction relief. *See Birdo v. Rodriguez*, 84 N.M. 207, 209, 501 P.2d 195, 197 (1972) ("We have in mind that the petition was not prepared by an attorney and regard it with a tolerant eye."). Although Brooks's petition did not use legally appropriate terms such as "procedural due process," it clearly alleged that he was deprived of his good-time credits in violation of established procedures.

time but allowed Brooks to remain at the Central Minimum Unit. Because termination was not part of the disciplinary officer's recommendation, the IRC did not review whether Brooks's eligibility to earn future good-time credits should have been terminated. In April 1993 Brooks learned that he had not been awarded good-time credits for the period from December 3, 1992 (when he was first cited for misconduct) through March 30, 1993. Upon learning this, he protested to the IRC, which ordered that he be awarded the December 1992–March 1993 good-time credits retroactively. Later, the Chief Classification Officer, who was not a member of the IRC, acting on his own and without IRC authorization, reversed that decision, leaving Brooks once again without good-time credits for the relevant time period. Brooks appealed the Chief Classification Officer's actions to the Classification Appeals Officer, who upheld its validity.

The warden filed a response to Brooks's petition, stating that the Corrections Department's administrative regulations provided that "Meritorious Good Time (MGT) will be terminated for ... being found guilty of a major level misconduct report as petitioner here was." Thus, according to the warden, Brooks's eligibility to earn good-time credits automatically terminated once he was found guilty of a major-level misconduct and was valid regardless of any procedural irregularities that might have occurred. The warden further responded that the procedure surrounding Brooks's eligibility termination could not have violated his right to due process because "[t]he only 'right' to good time is whether a statute provides for good time; here, the statute is permissive, not mandatory and therefore no 'right' accrues.... Under *Aqui*, his claim fails for he has no statutory basis for a 'right' which does not exist under law."

For the reasons discussed below, the warden's response did not establish that Brooks's petition merited dismissal as a matter of law. On the contrary, if the allegations in Brooks's petition were correct, there may very well have been violations of his right to due process. However, the trial court dismissed his petition without holding an evidentiary hearing to ascertain the truth or falsity of those allegations. Although the rationale underlying the trial court's cursory order of dismissal is difficult to determine, the court appears to have concluded, from the "permissive" wording in Section 33–2–34(C) ("meritorious deductions *may* be terminated upon recommendation of the classification committee" (emphasis added)), that "the claim asserted fails because Petition[er] has no statutory basis for a 'right' which does not exist under law." This argument was emphasized in the warden's response to Brooks's habeas petition, quoted above.

## II.

Because the warden's reading of *Aqui* appears to have underlain the trial court's decision and because we disagree with this reading, we now clarify certain language in that case. In *Aqui* we held that because the language in NMSA 1978, Section 33–2–34 (Repl.Pamp.1983 & Cum.Supp.1985), relating to good-time credits was written in permissive terms ("Any inmate confined in the penitentiary ... may be awarded a deduction ... based on good conduct"), due process did not require that the defendants in that case be awarded credits for the time they spent in presentence confinement.[5] We held, "first, that the granting of good time credits is an administrative matter for the Corrections Department...." 104 N.M. at 347, 721 P.2d at 773. We also said that "[u]nlike mandatory credits under Section 31–20–12 [requiring that a person held in official confinement be given credit against his or her sentence for time spent in presentence confinement], the deduction of good time credits from an inmate's sentence is a discretionary matter entrusted not to the courts but to the administrators of the Corrections Department...." *Id.* at 348, 721 P.2d at 774.

---

5. Although *Aqui* interpreted the version of Section 33–2–34 appearing in the 1983 replacement pamphlet and the 1985 cumulative supplement to the 1978 compilation of our statutes, the changes to the relevant parts of that section which have been enacted since *Aqui* was decided are not material to our interpretation of the current version.

■ These statements, however, should not be read as holding or implying that district courts should never analyze whether a forfeiture or termination of good-time credits has been carried out so as to violate an inmate's right to due process. On the contrary, if a petition demonstrates on its face that a forfeiture or termination has been imposed in a manner that departs from or circumvents the statutory and administrative procedures prescribing how such a forfeiture or termination should be effected, the petition may well be alleging a deprivation of the petitioner's right to due process that should be addressed by the court. When presented with such a petition the trial court *must* hold an evidentiary hearing to verify or discredit the petitioner's factual allegations, *unless* it plainly appears that the petitioner is not entitled to relief as a matter of law, based on (1) the facts alleged in the petition (including any attachments thereto) or (2) the uncontroverted facts shown by either the court record or the respondent's response to the petition. *See* SCRA 5–802(E)(1) & (3).

### III.

■ In addition to disagreeing with the trial court's reading of *Aqui,* we disagree with its summary conclusion that Brooks "has no statutory basis for a 'right.'" A state may create a liberty interest by establishing procedures that control how a deprivation of rights or privileges such as good-time credits may be imposed. *See Wolff v. McDonnell,* 418 U.S. 539, 546, 557, 94 S.Ct. 2963, 2970, 2975, 41 L.Ed.2d 935 (1974) (holding that state statute specifying that good-time credits could be forfeited only " '[i]n cases of flagrant or serious misconduct' " provided right to good-time credits which could be forfeited only for incidents of serious misbehavior (quoting Neb.Rev.Stat. § 83–185(2) (Cum.Supp.1972))); *Olim v. Wakinekona,* 461 U.S. 238, 249, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813 (1983) ("[A] State creates a protected liberty interest by placing substantive limitations on official discretion."); *Garcia v. Las Vegas Medical Ctr.,* 112 N.M. 441, 444, 816 P.2d 510, 513 (Ct. App.) ("A statute may identify a private interest protected by state law. . . . If the resulting substantive right is more extensive than what federal law provides, the state substantive right may be the basis for deciding what procedures are required by the federal Constitution."), *cert. denied,* 112 N.M. 308, 815 P.2d 161 (1991). We hold that the language in Subsection 33–2–34(C) and in Section 33–2–36 "plac[ed] substantive limitations on official discretion," *Olim,* 461 U.S. at 249, 103 S.Ct. at 1747, and gave Brooks the right not to be subjected to a forfeiture or termination of his good-time credits unless the appropriate procedures were followed. If those procedures, which included obtaining the IRC's recommendation and the warden's approval, were circumvented, a due process violation occurred. *See Wolff,* 418 U.S. at 557–58, 94 S.Ct. at 2975–76:

> [T]he State having created the right to good time and itself recognizing that its deprivation is a sanction authorized [only] for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated. . . .
>
> . . . .
>
> . . . Since prisoners in Nebraska can only lose good-time credits if they are guilty of serious misconduct, the determination of whether such behavior has occurred becomes critical, and the minimum requirements of procedural due process appropriate for the circumstances must be observed.

Accordingly (and, again, assuming that his allegations are true), Brooks was not given due process because the good-time credits he would have accrued from December 1992 to March 1993 were denied in a manner that did not comport with the procedures required by Subsection 33–2–34(C). When the Chief Classification Officer altered Brooks's chronology to reverse the IRC's reinstatement of his good-time credits, he did so without having obtained the classification committee's

recommendation or the warden's approval.[6] Brooks also was not given notice, before the hearing in which he attempted to resist the charges against him, of the potential termination of his ability to earn future good-time credits. *See McCoy v. New Mexico Real Estate Comm'n,* 94 N.M. 602, 604, 614 P.2d 14, 16 (1980) ("Embodied in the term 'procedural due process' is reasonable notice and opportunity to be heard and present any claim or defense.").

## IV.

Attached to Brooks's brief in chief in this case are various documents.[7] By presenting their interpretations of these documents, the parties in effect invite us to undertake an evidentiary analysis of them. Not only is it infeasible for us to do such an analysis unaided by testimony, *see Mascarenas v. Jaramillo,* 111 N.M. 410, 412, 806 P.2d 59, 61 (1991) ("only the trier of facts may weigh the testimony ... and say where the truth lies"), we find the documents inconclusive in any event. Because it did not hold an evidentiary hearing, the trial court had no way of confirming or refuting the factual allegations in Brooks's petition—and neither do we. The warden's insistence in his answer brief and at oral argument that "[b]ased on matters not of record, undersigned counsel asserts that [Brooks's] scenario is simply false" is inadequate, because neither we nor any other court in this jurisdiction decides the length of a person's incarceration based on matters not of record. Accordingly, we hold that the trial court erred in dismissing Brooks's petition without an evidentiary hearing to determine whether his claims were true or "simply false." *See State v. Reece,* 79 N.M. 142, 143, 441 P.2d 40, 41 (1968):

> It should be evident that among claims made by petitioner are several concerning occurrences outside the record which, if

true, would be grounds for vacating his sentence, and that these assertions could not be resolved without a hearing.... [A]bsent a hearing at which testimony is adduced, no method is available for determining the truth. The court erred in denying the motion [for postconviction relief] without ... an evidentiary hearing.

*See also* 39 Am.Jur.2d *Habeas Corpus* § 153 (1968) ("Assuming that the allegations of a petition for a writ of habeas corpus state a case that will entitle the petitioner to a discharge, if proved, the court cannot refuse to hear competent and relevant evidence on the issues raised by the pleadings.").

The order dismissing Brooks's petition for a writ of habeas corpus is reversed and the cause is remanded to the trial court for an evidentiary hearing in accordance with this opinion.

**IT IS SO ORDERED.**

BACA, C.J., and RANSOM, J., concur.

---

6. This action also violated the Corrections Department's own administrative regulations, which set forth procedural requirements parallel to those in the statute: "The Classification Committee should review [the Disciplinary Committee's recommendation regarding forfeiture or termination of good-time credits] and take appropriate action.... The Warden should either approve or disapprove the recommendation."

7. The documents attached to the brief in chief include a disciplinary decision form which documents the disciplinary officer's recommendation that Brooks forfeit thirty days of good-time credits and a "chrono" report which appears to document the IRC's attempt to reinstate the disputed amount of good-time credits and the Chief Classification Officer's nullification of that attempt.