2003-NMSC-031

81 P.3d 39

**Joel L. COMPTON, Petitioner,**

v.

**Ronald LYTLE, Warden, Respondent.**

**No. 27,967.**

Supreme Court of New Mexico.

Nov. 5, 2003.

Tova Indritz, Albuquerque, for Petitioner.

Patricia A. Madrid, Attorney General, Ralph E. Trujillo, Assistant Attorney General, Albuquerque, for Respondent.

## OPINION

CHAVEZ, Justice.

{1}   In 1983 Petitioner was sentenced to death, but on November 26, 1986, Governor Anaya commuted Petitioner's death sentence to life imprisonment. In this proceeding, Petitioner contends he is eligible for a parole hearing, having accumulated 6,393 days of various good-time credits as of December 31, 2002. Because the Legislature has specifically provided that inmates serving life sentences only become eligible for a parole hearing after thirty years, we hold that Petitioner is not eligible for a parole hearing until he has actually served thirty years in prison, his good-time credits notwithstanding.

### I.

{2}   Petitioner's request for a parole hearing sooner than the statutory thirty-year period stems from the Department of Corrections' ("Department's") former practice of awarding all inmates good-time credits, including those inmates serving a life sentence, and accelerating their parole eligibility date accordingly. From the point when Petitioner began serving his sentence in 1983 until April 15, 1988, the Department awarded him good-time credits of varying types.[1]  However, on April 15, 1988, the Department changed its policy and no longer accelerated the parole eligibility date of inmates serving a life sentence. Petitioner's parole eligibility date was thus returned to the original date of February 21, 2013, and although Petitioner continues to be "awarded" good-time credits, his parole eligibility date has not moved.

{3}   The Department's change in policy came about as a belated reaction to an opinion of the Attorney General issued on April 23, 1986, which concluded that prisoners serving life sentences were not eligible for good-time credits. *See* NM Att'y Gen. Op. 86–01 (1986). Initially, the Department disagreed with the Attorney General and continued to award good time to prisoners serving

---

1.  Petitioner has earned several types of good-time awards, including meritorious good time, industrial good time, extra-industrial good-time, lump-sum awards, and support-service good time. *See* NMSA 1978, § 33–2–34 (1981, prior to amendments through 1988, repealed 1999)

(meritorious and lump-sum awards); NMSA 1978, § 33–8–14 (1981, repealed 1999) (industrial good time). In this opinion, we will refer to them all as good time and rely on Section 33–2–34 for our analysis.

life sentences and move forward their parole eligibility dates accordingly. By letter of February 9, 1988, however, the Secretary of the Department advised the adult corrections director to institute policies that complied with the Attorney General's opinion, and inmates were so advised by a memorandum dated August 5, 1988.

{4} On April 3, 2002, Petitioner filed a petition for habeas corpus seeking reinstatement of his forfeited good-time credits and a determination that he could continue to accrue those credits and reduce his parole eligibility date. As he does to this Court, Petitioner argued to the district court that: (1) the relevant statutory provisions allow those serving a life sentence to accrue good-time credits toward accelerating their parole hearing date, and (2) the Department violated his due process rights by unilaterally revoking his accumulated credits and resetting his parole hearing date to the original date of February 21, 2013. The district court denied the petition without a hearing, noting that "[a]lthough the NM Supreme Court has not directly addressed this issue, it has apparently accepted that there cannot be parole before thirty years on a life sentence[,]" and citing to *Martinez v. State*, 108 N.M. 382, 383, 772 P.2d 1305, 1306 (1989). We granted the petition for a writ of certiorari, *see* Rule 12–501 NMRA 2003, and now expressly hold that under the relevant statutory provisions, an inmate serving a life sentence is not eligible for a parole hearing until he or she has actually served thirty years of that sentence in prison. With respect to Petitioner's due process claim, we hold that he did not have a liberty interest in erroneously granted good-time credits; therefore, his due process rights were not violated. We affirm the district court.

## II.

{5} An apparent conflict in two statutory provisions created the controversy in this case. On the one hand, under the Probation and Parole Act, an inmate serving a life sentence only "becomes eligible for a parole hearing after he has served thirty years of his sentence." NMSA 1978, § 31–21–10(A) (1980, prior to amendments through 1997). On the other hand, the relevant good-time statutory provisions speak in broad terms, arguably applying to any inmate and not specifically excluding those serving a life sentence from their coverage. For example, NMSA 1978, § 33–2–34(A) (1981, prior to amendments through 1988, repealed 1999)[2] provided that "*[a]ny inmate* confined in the penitentiary of New Mexico or other institution ... may be awarded a deduction of not more than ten days' meritorious good time per month..." (emphasis added). Petitioner argues this provision does not specifically exclude those serving life sentences, and an inmate serving a life sentence is therefore eligible to receive good-time credits to reduce the thirty-year period provided by Section 31–21–10(A).

{6} In at least three cases, this Court has previously expressed its understanding that a life sentence required the inmate to actually serve thirty years in prison prior to being eligible for a parole hearing. In *Martinez,* we rejected a pro se litigant's argument that Section 31–21–10(A) denies him equal protection of the law because it "prevents him from achieving meritorious deductions from his life term before thirty years have elapsed, even though [Section 33–2–34] would otherwise permit such deductions." *Martinez,* 108 N.M. at 383, 772 P.2d at 1306. Instead, this Court held that the Legislature "did not overstep its prerogatives in concluding that capital felons may be detained in prison for at least thirty years before being given a parole hearing, irrespective of any meritorious deductions that are allowed to noncapital felons." *Id.*

{7} In *State v. Henderson,* 109 N.M. 655, 789 P.2d 603 (1990), *overruled on other grounds by Clark v. Tansy,* 118 N.M. 486, 882 P.2d 527 (1994), this Court found error in

---

**2.** The Legislature re-enacted Section 33–2–34 in 1999 and added a new subsection (G), which provides, "The provisions of this section shall not be interpreted as providing eligibility to earn meritorious deductions from a sentence of life imprisonment or a sentence of death." NMSA 1978, § 33–2–34(G) (1999). Both parties agree, however, that this addition does not apply to Petitioner's sentence.

the trial court's rejection of the following jury instruction:

> An inmate of [the state penitentiary] who was sentenced to life imprisonment as the result of the commission of a capital felony becomes eligible for a parole hearing after he has served thirty years of his sentence.

*Id.* at 658, 789 P.2d at 606. We noted, "The requested instruction would have given the jury accurate information on what a life sentence actually means and would have served to correct misimpressions in some jurors' minds that a life sentence means 'five or six' years or some other erroneously conceived period of time." *Id.* at 659, 789 P.2d at 607. Similarly, in *Clark,* 118 N.M. at 493–94, 882 P.2d at 534–35, this Court remanded the case to ensure that the jury be informed of the earliest point in time that the defendant could be considered for parole should the jury choose life over death. In so doing, we cited *Martinez* and described it as holding that capital felons must be imprisoned for at least thirty years before being given a parole hearing, regardless of any meritorious deductions allowed to non-capital felons. *Clark,* 118 N.M. at 494, 882 P.2d at 535. The Legislature in 2001 supported this Court's holdings and added NMSA 1978, § 31–18–14.1 (2001), which states, "At the beginning of a sentencing hearing for a capital felony case ..., the court shall explain to the jury that a sentence of life imprisonment means that the defendant shall serve thirty years of his sentence before he becomes eligible for a parole hearing, as provided in Section 31–21–10 ...."

{8} Petitioner argues that our broad understanding as expressed in these cases does not specifically answer the question he raises, which is whether the thirty-year period may be reduced by any good-time credits earned by the inmate. In support of his contention that good-time credits should be calculated to reduce the thirty-year period, Petitioner argues primarily that Section 31–21–10(A) establishes a minimum sentence analogous to the minimum sentence an inmate would receive under the former indeterminate sentencing scheme, and that the minimum sentence was traditionally reduced by good-time credits, despite statutory language similar to Section 31–21–10(A). Petitioner also argues that other conventions of statutory interpretation support his reading of Sections 31–21–10(A) and 33–2–34.

### A.

### Indeterminate sentence analogy

{9} Prior to 1979, defendants received indeterminate sentences, with the judge setting the minimum and maximum term of imprisonment. The ranges were set by statute, but the judge had discretion to adjust the numbers within that range or suspend part of the sentence. Thus, as noted in a case decided under that sentencing scheme,

> [W]here the penalty provided was, say, one to three years, the courts could sentence for a period of from one to two years, or two to three years, or not less than three nor more than three, or any combination between one and three years.

*Owens v. Swope,* 60 N.M. 71, 77, 287 P.2d 605, 608–09 (1955) (per curiam). Before *Owens,* the New Mexico State Penitentiary allowed good-time credits to reduce the minimum sentence and granted the inmate a discharge when that reduced minimum sentence had been served. *Owens,* however, held that good-time credits should serve two functions: (1) reducing the maximum sentence, at which time the inmate was *entitled to a discharge,* and (2) reducing the minimum sentence, the time at which the inmate becomes *eligible for parole. Id.* at 80, 287 P.2d at 611. The Court allowed the good-time credits to reduce the parole-eligibility date despite the following language in the parole statute: "[The Board] shall have power to establish rules and regulations under which prisoners within the penitentiary may be allowed to go upon parole outside the penitentiary building and enclosure ... *after having served the minimum term of his sentence* ...." *Owens,* 60 N.M. at 76, 287 P.2d at 608 (emphasis added) (quoting NMSA 1953, § 41–17–6); *see also French v. Cox,* 74 N.M. 593, 597, 396 P.2d 423, 426 (1964); *Coutts v. Cox,* 75 N.M. 761, 764–65, 411 P.2d 347, 348–49 (1966).

{10} Petitioner argues that his situation is identical to that of an inmate under the indeterminate sentencing structure that faced a minimum and maximum sentence. He contends that his maximum sentence is life imprisonment and his minimum sentence is thirty years. Further, Petitioner argues that the language "after having served the minimum term of his sentence" in *Owens* is indistinguishable from "after he has served thirty years of his sentence" in Section 31–21–10(A). Therefore, Petitioner argues, because we concluded that the Legislature intended good-time credits to reduce the parole eligibility date in *Owens*, we should conclude that the Legislature intended the credits to do the same for him. We disagree because we conclude that the Legislature intended to differentiate between capital and noncapital felons by allowing for good-time credits for the latter and denying them to the former. We base this conclusion on the fact that a life sentence does not have a determinate maximum sentence to be reduced by good-time credits, and the Legislature never intended Section 31–21–10(A) to create a minimum sentence as contemplated by *Owens*.

{11} Even under the indeterminate sentencing scheme, life sentences have always been understood to be different from a sentence for a term of years. Thus, in *Welch v. McDonald*, 36 N.M. 23, 7 P.2d 292 (1931), this Court had to determine whether an inmate sentenced to a term of 40 to 90 years should be considered to have received a life sentence and thus was ineligible for bail pending his appeal. We concluded that the Legislature did not intend to equate long sentences with life imprisonment, given the vagaries introduced by good-time credits. *Id.* at 28, 7 P.2d at 294–95. In the course of that discussion, we noted:

> It would seem upon sound reason that any prisoner sentenced to "imprisonment for life" is excluded from the provisions of the deductions from sentence for good behavior acts of the Legislature, for the reason that such a one acquired no legal rights

under such statutes, as the length of the sentence cannot be determined until the death of the prisoner, and the same is, therefore, not an indeterminate period of time.

*Id.* at 26, 7 P.2d at 294. Thus, under the indeterminate scheme prior to 1955, life sentences were treated differently because there could be no minimum or maximum sentence.

{12} As we recognized in *Welch*, it seems obvious and a matter of logic that a life sentence does not have a determinate maximum term. Additionally, we are not persuaded that the Legislature established a minimum sentence for one imprisoned for life in 1955 by delineating a specific point in time when inmates serving a life term would become eligible for parole. In 1955 N.M. Laws, ch. 232, § 13, the Legislature provided that "[p]risoners sentenced to life imprisonment shall become eligible to appear before the parole board after they have served ten years." Except for the period of time, this provision is very similar to the current version of Section 31–21–10(A). The 1955 Act also delineated the parole eligibility of those serving non-capital sentences.[3] It provided, for example, that "[p]risoners sentenced for thirty years or more shall become eligible to appear before the parole board after they have served seven years *of their minimum sentence*." 1955 N.M. Laws, ch. 232, § 13 (emphasis added). The Legislature thus distinguished between the period of time before parole eligibility and a minimum sentence. We conclude the Legislature did not intend that the ten-year period prior to parole eligibility for one sentenced to life imprisonment would be considered a minimum sentence; otherwise, the above-quoted provision relating to those sentenced for thirty years or more would make little sense. We therefore do not read Section 31–21–10(A) to create a minimum sentence for those sentenced to life imprisonment, as that term was contemplated by *Owens*.

---

**3.** The 1977 determinate sentencing act revoked parole eligibility for those serving sentences other than life imprisonment, and instead changed parole from a way to serve part of a sentence outside prison to a mandatory addition to every

sentence. *See Quintana v. N.M. Dep't of Corr.*, 100 N.M. 224, 226, 668 P.2d 1101, 1103 (1983); *Compare* 1977 N.M. Laws, ch. 216, §§ 4(C), 11(B), 12, *with* 1955 NM Laws, ch. 232, §§ 3, 13.

{13} In *Owens* we held that the good-time credits applied to both the inmate's minimum and maximum sentence. There being no minimum or maximum sentence to one sentenced to life imprisonment, *Owens* would not require the application of good-time credits to such an inmate. Simply put, the thirty-year period provided by Section 31–21–10(A) should not be considered a minimum sentence as contemplated by *Owens.* We therefore cannot conclude, based on any analogy to a minimum sentence, that the Legislature intended to allow those serving a life sentence to have good-time credits reduce the thirty-year period of Section 31–21–10(A).

## B.

### Construction of the two statutes

{14} Not persuaded by Petitioner's argument by analogy, we next determine how to construe Sections 31–21–10(A) and 33–2–34. Petitioner argues that under several tenets of statutory construction, apart from his analogy to a minimum term under indeterminate sentencing, he is entitled to the credits under Section 33–2–34, the language of 31–21–10(A) notwithstanding. We disagree with Petitioner's construction of these two sections and conclude that the Legislature intended that an inmate serving a life sentence should not be released on parole prior to serving thirty years in prison, no matter how many good-time credits that inmate may have accumulated.

{15} Initially, we note that these two statutes cannot be read in a way that simultaneously gives effect to both. Allowing good-time credits to reduce Petitioner's parole-eligibility date flatly contradicts the plain language of Section 31–21–10(A): "An inmate of an institution who was sentenced to life imprisonment as the result of the commission of a capital felony ... becomes eligible for a parole hearing after he has served thirty years of his sentence." On the other hand, not giving good-time credits to Petitioner seems to contradict the plain language of Section 33–2–34(A): "*[a]ny inmate* confined in the penitentiary of New Mexico or other institution ... may be awarded a deduction of not more than ten days' meritorious good time per month" (emphasis added).

{16} Faced with this conflict, we apply the tenet of statutory construction that where two statutes conflict, the specific governs over the general. *See, e.g., Stinbrink v. Farmers Ins. Co.,* 111 N.M. 179, 182, 803 P.2d 664, 667 (1990). In this case, Section 33–2–34 applies generally to all inmates and would allow them the benefit of good-time credits, whereas Section 31–21–10(A) applies specifically to the class of inmates serving a life sentence, and for that group specifically defines when an inmate is eligible for a parole hearing. Section 31–21–10(A) provides a specific requirement that should govern over the general rule of Section 33–2–34. *See Martinez v. Cox,* 75 N.M. 417, 405 P.2d 659 (1965).

{17} In fact, *Martinez v. Cox* provides a useful analogy to this case, one more useful than the minimum and maximum sentences under the former indeterminate sentencing scheme. In that case, the petitioner was convicted for the unlawful possession of narcotics and sentenced to a term of not less than two and no more than ten years, with all but the first eighteen months suspended. The petitioner had received enough meritorious good time that he would have completed the eighteen-month sentence had he been entitled to the credits. At issue was the effect of a statute then in effect that provided that the "imposition or execution of a sentence (imposed in a narcotics conviction) shall not be suspended ... until the minimum imprisonment provided for the offense shall have been served." *Martinez v. Cox,* 75 N.M. at 418, 405 P.2d at 660 (quoting NMSA 1953, § 54–7–15(D) (repealed 1972)). The Court noted that, under *Owens,* good-time credits are normally deducted from the minimum sentence to set the date for parole eligibility. The Court concluded, however, that the statute quoted above "prohibits parole or probation of one convicted under the Narcotic Drug Act until the full minimum sentence provided by law has been served." *Id.* at 419, 405 P.2d at 660.

{18} Importantly, the Court in *Martinez v. Cox* rejected the petitioner's argument that giving effect to the statute quoted above would conflict with the provisions of the

good-time statute that would allow him to receive good-time credits: "It is a fundamental rule that where the general statute, if standing alone, would include the same matter as a special act, and thus conflict with it, the special act will be considered as an exception to or qualification of the general statute." *Id.* at 420, 405 P.2d at 660–61. We see no meaningful difference between Section 31–21–10(A) and the narcotics statute at issue in *Martinez v. Cox*; both provide a specific exception to the general rule established by the good-time-credits statute for a particular class of inmates, and both prevent good-time credits from reducing the parole eligibility date for those inmates beneath that which was specifically provided by statute.

{19} Petitioner has argued that the relevant statutes do not conflict and that neither is clearly more specific than the other. As we have indicated, we are persuaded that Section 31–21–10(A) and Section 33–2–34(A) do contradict each other. The balance of Section 33–2–34(A), however, supports our conclusion that Section 31–21–10(A) is more specific and *Martinez v. Cox* is analogous. The version of Section 33–2–34(C) in effect when Petitioner was sentenced states: "The meritorious deductions provided for in Subsections A and B of this section shall pertain to both the basic sentence to be served and any enhanced term of imprisonment pursuant to the provisions of the Criminal Sentencing Act." NMSA 1978, § 33–2–34(C) (1981, prior to amendments through 1988, repealed 1999). The use of the words "basic" and "enhanced" is significant. As part of the Criminal Sentencing Act, NMSA 1978, § 31–18–14 (1979, prior to 1993 amendment), provides the sentencing authority for capital felonies, and states that a capital felon "shall be punished by life imprisonment or death." On the other hand, NMSA 1978, § 31–18–15 (1981, prior to amendments through 1999) provides the sentencing authority for noncapital felonies, and it provides for a "basic sentence." Under NMSA 1978, § 31–18–15.1 through–17 (variously enacted from 1977, as amended through 2003), that basic sentence can be enhanced by proof of certain circumstances. Because Section 33–2–34 describes the meritorious deductions as pertaining to "basic" and "enhanced" sentences, and the

relevant provisions of the Criminal Sentencing Act only describe noncapital felonies as having basic and enhanced sentences, we conclude that the Legislature intended that only inmates convicted of noncapital crimes receive the benefit of good-time credits.

{20} Additionally, concluding that Section 33–2–34 should apply to every single inmate would lead to an absurd result. Although Section 33–2–34(A) states that "[a]ny inmate" is eligible for good-time credits, it would be strange to conclude that even an inmate on death row would be eligible for good-time credits. Under such circumstances those credits would be meaningless. The inmate does not benefit from good time credits once the sentence of death is carried out. We construe statutes so as to avoid reaching such an absurd result, *see State v. Gutierrez*, 115 N.M. 551, 552, 854 P.2d 878, 879 (Ct.App.1993), and conclude that Section 33–2–34 is limited to inmates who have been sentenced for noncapital felonies.

{21} Finally, that the Legislature re-enacted Section 33–2–34 in 1999 and clarified that those serving life sentences are not eligible for good-time credits is not determinative of its intent prior to 1999. The 1999 version, in addition to adding Subsection G, also removed any reference to "basic" and "enhanced" sentences. Having removed the language that implicitly tied meritorious deductions to noncapital sentences, it is understandable that the Legislature would have wanted to add other language clarifying that the section, as amended, "shall not be interpreted as providing eligibility to earn meritorious deductions from a sentence of life imprisonment or a sentence of death." Section 33–2–34(G).

{22} We conclude that the Department is without statutory authority to reduce the sentence of an inmate serving a life sentence for good-time credits earned, despite some sympathy for Petitioner's argument that granting such credits is good public policy. Although we agree that granting good-time credits to those serving a life sentence would further the policy of inmate discipline and cooperation, we note that the Legislature, at least for inmates sentenced to life after 1999,

explicitly concluded that the benefits of good-time credits has been outweighed by the benefits of imprisonment for a specific period of time. *See* Section 33–2–34(G). We see no reason why the Department ought not continue to record the awarding of good-time credits to those serving life sentences; if for no other reason, a record of good-time credits received would be beneficial to the Parole Board to objectively determine whether the inmate should be released on parole after thirty years. *See* NMSA 1978, § 31–21–10(A)(2) (1997) (directing the Parole Board to evaluate "all pertinent information concerning the inmate" before ordering parole for one serving a life sentence). In light of our conclusion that the current policy is consistent with the Legislature's intent, we are not persuaded that we should defer, as Petitioner has argued, to the Department's prior interpretation of the relevant statutes.

### III.

{23} Petitioner also argues that the State violated his right to due process of law[4] when it forfeited all of his good-time credits and precluded him from obtaining more in the future. Petitioner argues that "[t]he state, through its statutes, regulations, inmate handbook, and practice" has given him an objectively reasonable expectation in the continued benefit of the good-time credits he began to receive in 1983, and thus has created a liberty interest in them. The State, on the other hand, argues that Petitioner has no liberty interest in the good-time credits the Department erroneously granted him because there is no statutory basis for the Department's error. We have already determined that the credits were erroneously granted; the sole remaining issue is whether the unilateral revocation of erroneously granted good-time credits violates the due process clause of the Constitution. We conclude that it does not.

{24} We find the Tenth Circuit's opinion in *Stephens v. Thomas*, 19 F.3d 498 (10th

Cir.1994), persuasive when it concluded that a similarly situated inmate did not have the necessary liberty interest in good-time credits to establish a due process violation from their deprivation. *Id.* at 501. In *Stephens*, the petitioner was sentenced by a New Mexico court to life imprisonment for first-degree murder, plus a consecutive ten- to fifty-year term for armed robbery. He was initially told that his conditional parole date would be November 24, 1987, which represented the original date as reduced by his good-time credits. Four days prior to that date, however, the petitioner was notified by the Board that they had rescinded his parole after having been informed by the Attorney General that the ten-year minimum (now thirty-year) imprisonment for a life sentence could not be reduced. *Id.* 499–500.

{25} The petitioner filed a federal habeas claim, arguing in part that the rescission of his good-time credits violated his right to due process. The Court of Appeals for the Tenth Circuit rejected this argument. The court noted that, "[d]espite the clear prohibition on affording prisoners with life sentences the benefits of good time before their first ten years, the Department of Corrections began applying the good time statute to life sentences." *Id.* at 500. Because the granting of those credits was error in the first place, the petitioner did not have a liberty interest in them:

> At the time of [the petitioner's] conviction, a prisoner serving a life term possessed no such [liberty] interest in good time credits during the first ten years of his sentence.... The state's previous practice of misapplying the law does not change this.... The revocation of good time credits from a life term prisoner who has served less than ten years of his sentence, therefore, does not implicate the Due Process Clause.

*Id.* at 501 (citations omitted); *see also Lasiter v. Thomas*, 89 F.3d 699, 702 (10th Cir.

4. In his brief, Petitioner cites both the federal due process clause and Article II, Section 19 of the New Mexico Constitution. Petitioner did argue that we should interpret the New Mexico Constitution more broadly than the federal counterpart. Because, however, Petitioner failed to

"provide reasons for interpreting the state provision differently from the federal provision," *State v. Gomez*, 1997–NMSC–006, ¶ 23, 122 N.M. 777, 932 P.2d 1, we decline to address his argument under the New Mexico Constitution.

1996) ("The *Stephens* court held that at the time of conviction a defendant sentenced to life does not possess a liberty interest in good time credits even though the state has previously followed the practice of misapplying the statutory requirement by awarding such credits."). As these cases makes clear, Petitioner did not establish that the State violated his right to due process by correcting its earlier error of applying good-time credits to his parole-eligibility date and denying him a parole hearing prior to the completion of thirty years.

{26} Because the credits were erroneously granted in the first place, this case is not controlled by *Brooks v. Shanks*, 118 N.M. 716, 885 P.2d 637 (1994). In that case we acknowledged an entitlement to good-time credits, the deprivation of which must be accomplished in accordance with statutory and regulatory requirements. *Id.* at 717, 885 P.2d at 638. The Department in *Brooks* had terminated the petitioner's right to accumulate future good-time credits after an investigation found him guilty of major misconduct. *Id.* at 718, 885 P.2d at 639. This Court held that the petitioner had alleged sufficient facts to warrant a hearing to determine whether the Department had deprived him of future good-time credits in a manner that did not comport with the procedures required by Section 33–2–34(C). *Id.* at 720, 885 P.2d at 641. Because of our earlier holding that the Department in this case *granted* Petitioner the credits in a manner that did not comport with statutory authority, *Brooks* does not require finding a due process violation in this case.

{27} We acknowledge that the removal of the credits Petitioner had already accumulated is more troubling than the forfeiture of the right to earn future credits. Because of *Stephens* and *Lasiter*, however, Petitioner simply did not have a liberty interest in keeping erroneously granted good-time credits. Had the Department simply written the wrong number of credits down on one of Petitioner's reports, we certainly would not find the correction of the scrivener's error to be a violation of the Constitution. We also note that from the time he was sentenced until after the Attorney General issued his opinion, Petitioner was on death row; it is hard to imagine that under those circumstances he would have had a reasonable expectation in having good-time credits adjust his parole-hearing date.

## IV.

{28} For the foregoing reasons, we conclude that under Section 31–21–10(A) Petitioner is not entitled to a parole hearing before he has spent thirty years in prison, Section 33–2–34 notwithstanding. We also conclude that Petitioner does not have a liberty interest in having erroneously granted past or future good-time credits reduce his parole-eligibility date beneath that thirty-year period. We affirm the district court.

{29}  **IT IS SO ORDERED.**

MAES, C.J., MINZNER, SERNA and BOSSON, JJ., concur.