FILED
United States Court of Appeals
Tenth Circuit

July 24, 2025

Christopher M. Wolpert
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

_____

KEVIN OGDEN,

     Petitioner - Appellant,

v.

ATTORNEY GENERAL FOR THE
STATE OF NEW MEXICO;
PENITENTIARY OF NEW MEXICO
SOUTH; CHARLENE HAGERMAN,
Warden,

     Respondents - Appellees.

No. 24-2140
(D.C. No. 1:22-CV-00801-JCH-JMR)
(D. N.M.)

_____

ORDER DENYING CERTIFICATE OF APPEALABILITY[*]
_____

Before **TYMKOVICH**, **BACHARACH**, and **EID**, Circuit Judges.
_____

Kevin Ogden is serving a life sentence for a New Mexico murder conviction. Yet

he asserts that he has completed the sentence and that he remains confined only because

prison authorities have unlawfully deprived him of good-time credits. He filed a

28 U.S.C. § 2241 habeas application seeking release, and the district court denied it. He

---

[*] This order is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

now applies for a certificate of appealability (COA) to appeal the district court's judgment.[1]  *See* 28 U.S.C. § 2253(c)(1)(A).

I

Some New Mexico inmates can earn good-time credits that decrease the maximum amount of time they "must serve in prison before being eligible for parole or release." *State v. Tafoya*, 237 P.3d 693, 698 (N.M. 2010).  Since before Mr. Ogden's 1992 crime, however, New Mexico's Department of Corrections has operated under the view that good-time credits cannot decrease life sentences.  *See Compton v. Lytle*, 81 P.3d 39, 40–41 (N.M. 2003), *superseded by statute on other grounds*.  New Mexico's legislature made that point explicit in 1999.  *See id.* at 45; 1999 N.M. Laws ch. 238, sec. 1 (clarifying that the relevant statute "shall not be interpreted as providing eligibility to earn meritorious deductions from a sentence of life imprisonment").  And the Supreme Court of New Mexico later confirmed that, even before the 1999 legislation, "the Legislature intended that only inmates convicted of noncapital crimes receive the benefit of good-time credits." *Compton*, 81 P.3d at 45.  Unable to take advantage of good-time credits, New Mexico inmates serving life sentences become eligible for parole after serving thirty years of the sentence.  N.M. Stat. Ann. § 31-21-10(A).

In 1994, Mr. Ogden received a life sentence for a murder conviction and consecutive sentences totaling six years for other convictions.  He received a parole hearing in 2022, but the board denied him parole.

---

[1] Mr. Ogden represents himself, so we construe his filings liberally.  *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

On the heels of his parole denial, Mr. Ogden filed the § 2241 application underlying this case. The application raised four claims:

1. He is really serving a 36-year sentence[2] that should have been reduced by good-time credits. With those credits, he discharged the sentence long ago. And by refusing to apply the credits to reduce his sentence, the Department of Corrections has effectively revoked his credits without due process.

2. The Supreme Court of New Mexico committed fraud by issuing the decision in *Compton*.

3. "Special laws have always been illegal and do not control over general laws." R. at 108 (formatting modified). This claim appears to criticize *Compton*'s reliance on the canon of statutory construction holding that "the specific governs the general," *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992).

4. The 1999 legislation clarifying that good-time credits do not apply to a life sentence is an ex post facto law as applied to Mr. Ogden.

The district court denied the habeas application.

II

To obtain a certificate of appealability, Mr. Ogden must show that reasonable jurists would find the district court's resolution of his "constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). He has not done so.

*First*, he asserts that all New Mexico inmates—including those serving life sentences—"convicted before 1999" must receive good-time credits against their

---

[2] We suspect Mr. Ogden came up with 36 years by adding the 30 years he was required to serve on his life sentence and the 6 consecutive years he received on other counts. Whatever the reasoning behind it, the calculation is incorrect. On the murder count, he is serving a life sentence, not, for example, a 30-year sentence. New Mexico's parole laws require that he serve *at least* 30 years on the sentence. After serving 30 years, he became merely *eligible* for parole on the sentence.

sentences that cannot be revoked without due process. COA Appl. at 2 (formatting modified). *Compton* forecloses this argument. *See* 81 P.3d at 45.

Mr. Ogden's attempts to distinguish *Compton* fall short. Granted, differences exist between *Compton* and this case. The inmate in *Compton* sought good-time credits in part for time spent on death row (before his sentence was commuted to life imprisonment), whereas Mr. Ogden never had a death sentence. *See id.* at 40. And the Department of Corrections initially (and erroneously) applied good-time credits to the inmate's sentence in *Compton* (before ultimately removing them). *See id.* But those differences do not matter. *Compton*'s holding—that "inmates serving life sentences" cannot receive the benefit of good-time credits—squarely addresses Mr. Ogden's circumstances.[3] *Id.*

*Second*, Mr. Ogden alleges several errors in the *Compton* decision. But whether the Supreme Court of New Mexico erred in interpreting New Mexico statutes is a matter of state law that we cannot address here. After all, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991).

*Third*, Mr. Ogden says that "special laws have always been illegal and do not control over general laws." COA Appl. at 7 (formatting modified). This argument confuses a type of legislation that New Mexico calls a "special law," *see Thompson v.*

---

[3] The record suggests that Mr. Ogden has accumulated good-time credits over the years. And he faults the district court for labelling his good-time credits unearned. But whether he has earned any accumulated credits does not matter. What matters is that New Mexico law prohibits prison officials from applying the credits to reduce his life sentence. *See Compton*, 81 P.3d at 45.

*McKinley County*, 816 P.2d 494, 496 (N.M. 1991), with the well-established canon of construction (employed in *Compton*) recognizing that the specific controls over the general. Grounded in confusion, this argument presents no coherent constitutional claim.

*Fourth*, Mr. Ogden asserts that "retroactive laws have always been illegal." COA Appl. at 8 (formatting modified). This assertion hints at two possible constitutional claims, but neither has even debatable merit.

The 1999 legislation clarifying that life sentences will not be reduced through good-time credits is not an ex post facto law. The law is prospective, applying only "to persons convicted of a criminal offense committed on or after July 1, 1999." 1999 N.M. Laws ch. 238, sec. 8. So it does not even apply to Mr. Ogden. And even if it did, it would not violate the Ex Post Facto Clause because it does not "disadvantage" him. *Weaver v. Graham*, 450 U.S. 24, 29 (1981). Even before the 1999 legislation, the relevant statutes precluded inmates serving life sentences from receiving "the benefit of good-time credits." *Compton*, 81 P.3d at 45.

Nor does it violate due process to apply *Compton*'s holding to Mr. Ogden's sentence because *Compton*'s interpretation of New Mexico's parole and good-time statutes was foreseeable. *See Lustgarden v. Gunter*, 966 F.2d 552, 554 (10th Cir. 1992). Indeed, the New Mexico Attorney General had adopted the same interpretation years before Mr. Ogden's crime. *See Compton*, 81 P.3d at 40.

5

III

We grant Mr. Ogden's motion to proceed without prepaying costs or fees. We deny a certificate of appealability and dismiss this matter.

Entered for the Court

CHRISTOPHER M. WOLPERT, Clerk