# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2010-NMSC-019

Filing Date: April 28, 2010

Docket No. 30,396

STATE OF NEW MEXICO,
        Plaintiff-Appellee,

v.

ANTHONY TAFOYA,
        Defendant-Appellant.

APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Neil C. Candelaria, District Judge

Hugh W. Dangler, Chief Public Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

Gary K. King, Attorney General
Andrew S. Montgomery, Assistant Attorney General
Santa Fe, NM
for Appellee

## OPINION

**SERNA, Justice.**

## I.    Introduction

{1}    Defendant Anthony Tafoya pled guilty to first degree murder and was sentenced as a serious youthful offender. The Second Judicial District Court exercised its statutorily granted discretion in sentencing Defendant as a serious youthful offender by imposing a sentence of thirty years imprisonment, with ten years suspended, and four days good time credit eligibility per month. Defendant appeals the limitation on his good time credit eligibility, arguing that it violates the legislative enactment of the prison good time credit scheme, the Earned Meritorious Deductions Act ("EMDA"), NMSA 1978, Section 33-2-34 (2006).

{2}    The EMDA governs the eligibility for and award of good time credits in our state prisons. The statute is silent, however, on the good time credit eligibility of individuals, such as Defendant, sentenced as serious youthful offenders for convictions of first degree

1

murder and receiving less than a life sentence. After construing the EMDA harmoniously with the relevant sentencing statutes and taking into consideration the strong policy of encouraging rehabilitation of juvenile offenders, we conclude that the district court's discretion in sentencing serious youthful offenders implies the discretion to limit, as part of the sentence, Defendant's good time credit eligibility to four days per month. Defendant's sentence is affirmed.

## II. Background

{3}    Defendant pled no contest to first degree murder, felony murder, contrary to NMSA 1978, Section 30-2-1(A)(2) (1994). Per the terms of the plea agreement, Defendant, age sixteen at the time of the murder, was sentenced as a serious youthful offender. The plea agreement set forth the district court's full discretion in sentencing Defendant "anywhere from probation up to a life sentence" and defined a life sentence as "a 30 year sentence before the possibility of parole, and without any good time credit followed by 5 years parole."

{4}    The district court sentenced Defendant to "life[,]" which the district court "interpreted . . . as meaning a 30 year sentence[,]" with ten years of the sentence suspended and five years of probation, citing its statutory discretion in sentencing serious youthful offenders under NMSA 1978, Sections 31-18-13(A) (1993) and 31-18-15.3(D) (1993). The sentence authorized "[t]he Department of Corrections [("DOC")] . . . to award Defendant good time credit in accordance with New Mexico law." When Defendant began serving his sentence, the DOC calculated his good time eligibility at the rate of thirty days per month. Subsequently, at the request of the DOC, the State filed a Motion to Clarify Judgment and Sentence seeking an explanation of the award permitting Defendant to earn good time credits. After a hearing, the district court ruled that Defendant was eligible to earn four days good time credit per month. Defendant then filed a Motion to Reconsider, which the district court denied. The district court's final order on Defendant's sentence ruled "[t]hat [] Defendant can earn a maximum of up to 4 days per month of good time credit . . . if he indeed earns it."

{5}    Defendant appeals the final order and argues that, under the EMDA, he should be eligible for up to thirty days good time credit per month. This appeal invokes our mandatory appellate jurisdiction under Article VI, Section 2 of the New Mexico Constitution and Rule 12-102(A)(1) NMRA. *See State v. Trujillo*, 2002-NMSC-005, ¶¶ 9-10, 131 N.M. 709, 42 P.3d 814 (holding that this Court has jurisdiction over a direct appeal from a serious youthful offender who received less than a life sentence because to require the "rare case of a serious youthful offender convicted of first-degree murder" to appeal first to the Court of Appeals would create "confusion and inconsistency" in our case law).

## III. Defendant's Plea Agreement Did Not Waive His Right to This Appeal

{6}    Before reaching the merits of Defendant's argument, we must address whether Defendant's plea agreement prohibits this appeal. In his plea agreement, Defendant "specifically waive[d] his right to appeal as long as the court's sentence is imposed according to the terms of this agreement." The State posits that the waiver may preclude this appeal. We disagree, and hold that a plea agreement may not waive the right to challenge

2

on appeal whether a sentence was imposed without jurisdiction.

**{7}**     We recently reiterated that "a voluntary guilty plea ordinarily constitutes a waiver of a defendant's right to appeal his conviction on other than jurisdictional grounds." *State v. Chavarria*, 2009-NMSC-020, ¶ 9, 146 N.M. 251, 208 P.3d 896 (*quoting State v. Hodge*, 118 N.M. 410, 414, 882 P.2d 1, 5 (1994)).   While we are careful to confine "the term 'jurisdictional error' . . . to instances in which the court was not competent to act," *State v. Orosco*, 113 N.M. 780, 783, 833 P.2d 1146, 1149 (1992), a court's sentencing power properly is considered part of its subject matter jurisdiction. *Chavarria*, 2009-NMSC-020, ¶¶ 11-12; *see also State v. Trujillo*, 2007-NMSC-017, ¶ 8, 141 N.M. 451, 157 P.3d 16 ("Because a trial court does not have subject-matter jurisdiction to impose a sentence that is illegal, the legality of a sentence need not be raised in the trial court."); *State v. Wyman*, 2008-NMCA-113, ¶ 2, 144 N.M. 701, 191 P.3d 559, *cert. granted*, 2008-NMCERT-008, 145 N.M. 255, 195 P.3d 1267, *cert. quashed* 2009-NMCERT-012, ___ N.M. ___, 227 P.3d 91 ("A claim that a sentence is illegal and unauthorized by statute is jurisdictional and may be raised for the first time on appeal."). Defendant's plea agreement, therefore, does not waive an appeal on the grounds that the district court was without authority to impose an illegal sentence.

**{8}**     In this case, the district court granted Defendant good time credit eligibility as part of his sentence.  Eligibility to earn good time credits is determined as part of sentencing only in a narrow class of cases.  Courts generally have a "limited role" in administering the EMDA.  *State v. Rudolfo*, 2008-NMSC-036, ¶ 37, 144 N.M. 305, 187 P.3d 170.  Under the EMDA, good time credit eligibility is determined as part of sentencing only when a sentence is imposed on a defendant for one of fifteen delineated crimes for which the court must decide whether the crime qualifies as a serious violent offense and thus a limited amount of good time credit eligibility per month.  Section 33-2-34(L)(4)(o).  As we discuss in great detail below, this is a rare case in which the district court properly determined Defendant's good time credit eligibility as part of his sentence based on its discretion in sentencing serious youthful offenders, and thus this challenge to that limitation is to the district court's sentencing jurisdiction and was not waived by the plea agreement.

### IV.    The Court's Discretion in Sentencing Serious Youthful Offenders Implies Discretion to Limit Good Time Credit Eligibility

**{9}**     Because the power of the courts to sentence is granted by statute, *see State v. Davis*, 2003-NMSC-022, ¶ 6, 134 N.M. 172, 74 P.3d 1064, we must analyze whether the EMDA permits the district court to limit the number of days for which a serious youthful offender is eligible to earn good time credit as part of the sentence.  When an appeal presents an issue of statutory construction, our review is de novo.  *State v. Marquez*, 2008-NMSC-055, ¶ 7, 145 N.M. 1, 193 P.3d 548.

**{10}**     In construing a statute, we must "ascertain and give effect to the intent of the Legislature."  *State v. Cleve*, 1999-NMSC-017, ¶ 8, 127 N.M. 240, 980 P.2d 23.  To accomplish this, we apply the plain meaning of the statute "unless the language is doubtful, ambiguous, or an adherence to the literal use of the words would lead to injustice, absurdity or contradiction, in which case the statute is to be construed according to its obvious spirit or reason."  *Davis*, 2003-NMSC-022, ¶ 6.  When application of the plain meaning of the

3

statute fails to result in a reasonable or just conclusion, we examine legislative history and "the overall structure of the statute and its function in the comprehensive legislative scheme." *State v. Smith*, 2004-NMSC-032, ¶ 10, 136 N.M. 372, 98 P.3d 1022. While the consideration of public policy is the province of the Legislature, *State v. Maestas*, 2007-NMSC-001, ¶ 14, 140 N.M. 836, 149 P.3d 933 (filed 2006), where a statute is ambiguous, we may consider the policy implications of varying constructions of the statute. *See State v. Rivera*, 2004-NMSC-001, ¶ 14, 134 N.M. 768, 82 P.3d 939 (filed 2003) (noting that this Court "would be exceeding the bounds of our role as an appellate court by second-guessing the *clear* policy of the Legislature" (emphasis added)). "Whenever possible, . . . we must read different legislative enactments as harmonious instead of as contradicting one another." *State v. Muniz*, 2003-NMSC-021, ¶ 14, 134 N.M. 152, 74 P.3d 86, *superseded in part by statute*, NMSA 1978, § 32A-2-20 (A), (G) (2005), *as recognized in State v. Jones*, 2010-NMSC-012, ¶ 19, ___ N.M. ___, ___ P.3d ___; *see also State v. Flores*, 2004-NMSC-021, ¶ 10, 135 N.M. 759, 93 P.3d 1264 ("[S]tatutes which relate to the same class of things are considered to be in pari materia, and, if possible by reasonable construction[.]" (internal quotation marks and citation omitted; first alteration in original)).

**{11}**    We commence our analysis by looking to the plain meaning of the EMDA. The EMDA governs the eligibility for and award of good time credits in our state prison system. Section 33-2-34; *see also Rudolfo*, 2008-NMSC-036, ¶ 35 (describing the EMDA as "a detailed set of guidelines for both the courts and the [DOC] to administer in the ultimate determination of a prisoner's eligibility for good time reductions from his period of confinement"). Good time credits decrease the maximum amount of time an inmate must serve in prison before being eligible for parole or release. *See Compton v. Lytle*, 2003-NMSC-031, ¶ 10, 134 N.M. 586, 81 P.3d 39.

**{12}**    Section A of the EMDA limits good time eligibility based on the crime for which an inmate is "confined for committing."[1]  An individual confined for one of fourteen "serious violent offenses," including second degree murder and voluntary manslaughter, Sections 33-2-34(L)(4)(a), (b), both lesser included offenses of first degree murder, is limited to four days good time credit eligibility per month. Section 33-2-34(A)(1). An individual confined for one of fifteen other delineated offenses, including involuntary manslaughter, Section 33-2-34(L)(4)(o)(1), is considered a serious violent offender "when the nature of the offense and the resulting harm are such that the court judges the crime to be a serious violent offense for the purpose of this section." Section 33-2-34(L)(4)(o). "[A]ny offense other than a serious violent offense" is classified as a "nonviolent offense," Section 33-2-34(L)(3), and the offender is eligible for 30 days good time credit per month. Section 33-2-34(A)(2).

**{13}**    First degree murder is absent from the serious violent offense/nonviolent offense dichotomy. Section G of the EMDA completely precludes good time credit eligibility for individuals serving a life sentence. Section 33-2-34(G); *see also Compton*, 2003-NMSC-031, ¶ 22 (concluding that the EMDA does not permit the award of good time credits to

---

[1]In general, juveniles sentenced as adults are eligible to earn good time credits under the EMDA based on the crime for which they were confined for committing. *Cf.* NMSA 1978, § 32A-2-20(E) (2009) ("A youthful offender given an adult sentence shall be treated as an adult offender[.]").

inmates serving a sentence of life or death). In contrast to Section A, which limits eligibility based on the offense committed, however, Section G speaks in terms of sentence length rather than the crime for which the sentence is imposed: "The provisions of this section shall not be interpreted as providing eligibility to earn meritorious deductions from a sentence of life imprisonment or a sentence of death." Section 33-2-34(G). Although we recently described Section G as speaking to the offense committed, *Rudolfo*, 2008-NMSC-036, ¶ 38, that language was inaccurate and unnecessary to our holding. While we characterized Section G of the EMDA as "preclud[ing] the award of any good time whatsoever for offenses carrying sentences of death or life imprisonment," *id.*, the reason that the district court in that case was without authority to permit the defendant to earn good time credit was due to the imposed sentence of life imprisonment, for which the plain language of the EMDA precludes good time credit eligibility. *Id.* Our opinion today in no way disturbs the holding in *Rudolfo*, in which the defendant was given the statutorily required sentence for an adult convicted of first degree murder, a capital felony, *see* Section 30-2-1(A), of life imprisonment. NMSA 1978, § 31-18-14 (1993). An adult convicted of first degree murder may not earn good time credits due to the term of the sentence, life, the district court is required, by statute, to impose.

{14}    Although convicted of first degree murder, Defendant, as a child, was not automatically sentenced to life in prison. Defendant was sentenced as a serious youthful offender. The Delinquency Act, NMSA 1978, Sections 32A-2-1 to -33 (1993, as amended through 2009), defines a serious youthful offender as "an individual fifteen to eighteen years of age who is charged with and indicted or bound over for trial for first degree murder." Section 32A-2-3(H). After conviction as a serious youthful offender, an adult sentence is imposed. *See* § 31-18-15.3(D) (stating that a sentencing court "shall sentence" a serious youthful offender as an adult pursuant to the Criminal Sentencing Act); *Jones*, 2010-NMSC-012, ¶ 17 (underscoring that, if treated as a serious youthful offender, "the child *must* receive an adult sentence"); *see also* § 32A-2-3(H) (stating that a serious youthful offender "is not a delinquent child"). Although a serious youthful offender must receive an adult sentence, a sentencing court has discretion to make the sentence "less than . . . the mandatory term for an adult." Section 31-18-15.3(D); *see also* § 31-18-13(A) ("[A] person sentenced as a serious youthful offender . . . may be sentenced to less than the basic or mandatory sentence[.]"). The district court exercised this statutory grant of discretion in fashioning Defendant's sentence of thirty years imprisonment with ten years suspended. Although the district court characterized Defendant's sentence as "life," the actual terms of the sentence differ significantly from a life sentence, which we have held to be thirty years imprisonment before the possibility of parole and without good time credit eligibility. *Compton*, 2003-NMSC-031, ¶ 4. Defendant was not sentenced to life imprisonment.

{15}    Under the EMDA, Defendant is serving less than a life sentence, and thus is not precluded from good time credit eligibility entirely by Section G. First degree murder is not listed as a serious violent offense, and thus Defendant's good time credit eligibility is not statutorily limited to four days per month based on the crime for which he was confined for committing. Applying the plain language of the statute, the exercise of discretion by the district court in sentencing Defendant to less than life imprisonment for his conviction of first degree murder has the untenable result of treating first degree murder as a nonviolent offense for purposes of the EMDA. Classifying first degree murder by a serious youthful offender as a *per se* nonviolent offense is the sort of absurd result for which we forego

5

applying the plain meaning test. *See State v. Trujillo*, 2009-NMSC-012, ¶ 25, 146 N.M. 14, 206 P.3d 125 (refusing to apply the absurd result reached under the plain language of the statute).

{16}    Nor does the plain meaning of the EMDA lead, as the State asserts it may, to the contrary result, one in which Defendant is entirely ineligible to earn good time credits. We have said that the EMDA "is limited to inmates who have been sentenced for non-capital felonies." *Compton*, 2003-NMSC-031, ¶ 20. Our statement in *Compton* is no longer accurate, however. *Compare* NMSA 1978, § 31-18-15 (1999) (statute in effect at time *Compton* was decided, listing basic sentences for non-capital felonies, the longest of which is eighteen years) *with* NMSA 1978, § 31-18-15(A)(1), (2) (2007) (reflecting amendments to the statute in 2003 and 2005 requiring a life sentence be imposed for convictions of non-capital first degree felonies resulting in the death of a child and for aggravated criminal sexual penetration). The EMDA precludes good time credit eligibility for individuals serving life sentences for any crime, Section 33-2-34(G), not just those convicted of first degree murder. If Defendant was sentenced as an adult to life imprisonment, he would be ineligible to earn good time credits. However, as explained above, Defendant is not serving a life sentence. The plain language of the statute does not completely exclude Defendant from the EMDA's good time credit scheme.

{17}    Because application of the plain meaning of the EMDA results in the absurd conclusion that the Legislature intended first degree murder, when committed by a youth, to be treated as a nonviolent offense, we look to the legislative history and policy of the statute. The legislative history of the statute supports the proposition that the Legislature intended sentencing courts to have discretion regarding the good time credit eligibility of serious youthful offenders. The Legislature amended the EMDA in 1999 to prohibit good time credit eligibility for inmates serving life or death sentences. *See Compton*, 2003-NMSC-031, ¶ 5 n.2. Subsequently, in *Trujillo*, we held, without explicitly discussing the EMDA, that a sentence of life imprisonment with good time credit eligibility for a serious youthful offender was not a cruel and unusual punishment because it was "authorized by statute and not constitutionally disproportionate to the crimes involved." 2002-NMSC-005, ¶ 66. After that decision, and before Defendant was sentenced, the Legislature amended the EMDA three further times. 2004 N.M. Laws (2003 1st S.S.), ch. 1, § 13; 2004 N.M. Laws, ch. 75, § 1; 2006 N.M. Laws, ch. 82, § 1. At no point did the Legislature indicate a dissatisfaction with our treatment of good time credit eligibility for a serious youthful offender as a statutorily authorized sentence, and thus we may infer that Legislative intent is to permit the discretion exercised by the district court in fashioning Defendant's sentence. *Cf. Incorporated County of Los Alamos v. Johnson*, 108 N.M. 633, 634, 776 P.2d 1252, 1253 (1989) ("We presume that the [L]egislature is well informed as to existing statutory and common law and does not intend to enact a nullity, and we also presume that the [L]egislature intends to change existing law when it enacts a new statute.").

{18}    This conclusion finds further support in the serious youthful offender sentencing scheme. The Legislature granted the district courts discretion in sentencing serious youthful offenders to further the primary goals of the Delinquency Act. These goals are: rehabilitation of the child, accountability, deterrence, protection of the public, and punishment for the crime committed. Section 32A-2-2. Our legal system does not consider juvenile offenders to be "with reliability . . . among the worst offenders" because youths'

consciences have not fully developed and thus they generally may be rehabilitated. *Roper v. Simmons*, 543 U.S. 551, 553 (2005) (holding that the death penalty imposed on minors violates the Eighth Amendment's prohibition against cruel and unusual punishment because "[t]he reality that juveniles still struggle to define their identity means it is less supportable to conclude that even a heinous crime committed by a juvenile is evidence of irretrievably depraved character"). Although we have said that the Legislature intended to treat serious youthful offenders "as adults, not as delinquent children," *Muniz*, 2003-NMSC-021, ¶ 15, the clear grant of discretion in sentencing serious youthful offenders, set forth in Sections 31-18-15.3(D) and 31-18-13(A), underscores the Legislature's intent to treat serious youthful offenders as individuals who may be rehabilitated.

**{19}** Similarly, the primary policy behind the good time credit scheme is inmate rehabilitation. The Legislature created the EMDA, and the analogous jail good time statute, NMSA 1978, § 33-3-9 (1995), as a tool for managing prisons and jails and to encourage inmate cooperation, good behavior, and rehabilitation. *See Compton*, 2003-NMSC-031, ¶ 22 (the policy behind the EMDA is to encourage "inmate discipline and cooperation"); *Coutts v. Cox*, 75 N.M. 761, 764, 411 P.2d 347, 349 (1966) (good behavior); *State v. Landgraf*, 1996-NMCA-024, ¶ 27, 121 N.M. 445, 913 P.2d 252 (rehabilitation); *see also Coleman v. Schwarzenegger*, No. CIV S-90-0520, No. C01-1351, 2009 WL 2430820, at *90-91 (E.D. Cal. Aug. 4, 2009) (discussing the evidence showing that expansion of California's good time credit system will alleviate prison overcrowding while not increasing recidivism). If an inmate is eligible to earn good time credits under the EMDA, credits are awarded "upon recommendation by the classification supervisor, based upon the prisoner's active participation in approved programs and the quality of the prisoner's participation in those approved programs." Section 33-2-34(B). By creating the EMDA's good time credit scheme, our Legislature has identified methods of motivating individuals to shorten their time spent in prison while becoming more productive members of our society.

**{20}** Reading the EMDA and the serious youthful offender sentencing statutes in harmony, the discretion granted to judges in sentencing serious youthful offenders would be severely curtailed if serious youthful offenders were strictly prohibited from earning good time credits during imprisonment. "[T]he judiciary's role in sentencing criminal defendants is not a purely ministerial task." *State v. Martinez*, 1998-NMSC-023, ¶ 13, 126 N.M. 39, 966 P.2d 747 (holding that the judicial branch has "inherent discretionary authority to grant presentence confinement credit" so long as a Legislative directive is not frustrated). District courts have broad discretion in fashioning a criminal sentence that is "appropriate to the offense and the offender." *State v. Sinyard*, 100 N.M. 694, 697, 675 P.2d 426, 429 (Ct. App. 1983). The goal of rehabilitating a serious youthful offender, whom the district court, by exercising discretion in sentencing, indicates is amenable to rehabilitation, is substantially advanced by permitting the district court to grant good time credit eligibility as part of the sentence. Doing so further motivates the child to better his or her life while in prison.

**{21}** We hold that the explicit Legislative grant of discretion to the district court in sentencing Defendant as a serious youthful offender implies the discretion to award serious youthful offenders good time credit eligibility within the existing framework of the EMDA, that is, zero, four, or thirty days good time credit eligibility per month. We underscore that this discretion is based not on the district court's defining first degree murder committed by a serious youthful offender as a serious violent offense or a nonviolent offense for purposes

7

of the EMDA, but rather on the discretion our Legislature granted sentencing courts in imposing a sentence that will best contribute to the rehabilitation of the child. The district court did not act outside its sentencing jurisdiction in permitting Defendant the ability to earn four days per month good time credit as part of his sentence. In awarding Defendant the same good time credit eligibility as permitted, under the EMDA, other individuals convicted of intentional killings but sentenced to less than life imprisonment, the district court reasonably exercised this implied discretion.

**{22}** Defendant argues that our conclusion is prohibited by a series of cases in which the district court was found to have abused its discretion by labeling a crime a serious violent offense, thus limiting the defendant's good time credit eligibility to four days without statutory authority. In *State v. McDonald*, 2004-NMSC-033, ¶¶ 20-21, 136 N.M. 417, 99 P.3d 667, we held that conspiracy to commit armed robbery was not on the discretionary serious violent offense list and therefore the district court abused its discretion in limiting good time credit eligibility. Likewise, in *State v. Bennett*, 2003-NMCA-147, ¶ 13, 134 N.M. 705, 82 P.3d 72, the Court of Appeals concluded that the district court erred in designating third degree aggravated battery on a household member as a serious violent offense when that crime was not listed as such in the EMDA. In *State v. Loretto*, 2006-NMCA-142, ¶ 22, 140 N.M. 705, 147 P.3d 1138, the Court of Appeals held that first degree criminal sexual penetration could not be sentenced as a serious violent offense without the district court first making a factual determination that it so qualified under the EMDA. Each of these cases is distinguishable as the crimes were excluded from the EMDA serious violent offense framework because the Legislature did not consider them to be such. *Cf. Rudolfo*, 2008-NMSC-036, ¶ 38 (finding that the district court erred by limiting good time credit eligibility where certain offenses were nonviolent offenses and the defendant received a life sentence for the first degree murder conviction, leaving the district court entirely without discretion under the EMDA). In this case, the district court did not define the crime which Defendant committed as a serious violent offense; rather, the district court determined that Defendant should be eligible to earn good time credits during his imprisonment as an exercise of discretion to increase Defendant's chance of rehabilitation.

**{23}** Defendant also argues that the rule of lenity must be applied to the EMDA to permit him to earn up to thirty days good time credit each month. We disagree. "The rule of lenity counsels that criminal statutes should be interpreted in the defendant's favor when insurmountable ambiguity persists regarding the intended scope of a criminal statute." *State v. Ogden*, 118 N.M. 234, 242, 880 P.2d 845, 853 (1994) (internal quotation marks and citation omitted). We apply the rule of lenity to statutes only in those cases "in which a reasonable doubt persists about a statute's intended scope even *after* resort to the language and structure, legislative history, and motivating policies of the statute." *Id.* As our construction of the EMDA concludes that the Legislature intended the district courts to have discretion to determine a serious youthful offender's good time credit eligibility as part of the sentence, we need not resort to the rule of lenity to resolve Defendant's appeal.[2]

---

[2]We acknowledge that the dissent makes a persuasive argument to reach a result that, though contrary to ours, is not an unreasonable interpretation of the legislative intent at issue. Although we do not find it necessary to apply the rule of lenity to resolve this case, doing so would result in the same conclusion: where there are two reasonable interpretations of

## V.    Defendant's Constitutional Claims are Without Merit

**{24}**    In addition to arguing that the district court was without statutory authority to limit his good time credit eligibility, Defendant argues that the order limiting his eligibility violated separation of powers and his constitutional rights of due process and equal protection.  We review these constitutional claims de novo.  *See State v. Brown*, 2006-NMSC-023, ¶ 8, 139 N.M. 466, 134 P.3d 753.

**{25}**    Because we hold that the district court acted within its statutorily authorized sentencing discretion in granting Defendant four days good time credit eligibility per month, the district court did not infringe on the executive branch's role in administering the EMDA or the Legislature's role in defining criminal penalties.  *See Martinez*, 1998-NMSC-023, ¶ 14 (holding that the granting of presentence confinement credit does not violate separation of powers); *State v. White*, 71 N.M. 342, 345, 378 P.2d 379, 381 (1963) ("The judicial power and the executive power over sentences are readily distinguishable.  To render judgment is a judicial function.  To carry the judgment into effect is an executive function." (quoting *United States v. Benz*, 282 U.S. 304, 311 (1931))).

**{26}**    Defendant argues that his equal protection rights under the United States and New Mexico constitutions were violated because other serious youthful offenders who are currently serving less than a life sentence are eligible to earn thirty days good time credit per month.  As Defendant recognizes, his equal protection claim is analyzed under a rational basis review.  *See Martinez v. State*, 108 N.M. 382, 383, 772 P.2d 1305, 1306 (1989) (holding that the Legislature had a rational basis for precluding good time credit eligibility for individuals serving a life sentence); *State v. Aqui*, 104 N.M. 345, 349, 721 P.2d 771, 775 (1986) *holding limited by Brooks v. Shanks*, 118 N.M. 716, 885 P.2d 637 (1994) (finding a "rational justification" in not awarding presentence confinement credit because individuals held prior to conviction are presumed innocent).  The discretion sentencing courts exercise in fashioning sentences for serious youthful offenders, including the discretion to award good time credit eligibility, is rationally related to the goals of punishment as well as rehabilitation.  Defendant's equal protection rights were not violated.

**{27}**    Nor were Defendant's due process rights under the State or Federal constitutions violated by the limitation placed on his good time credit eligibility.  Defendant argues that the district court, by amending the Judgment and Sentence, revoked his good time credit eligibility without due process of law.  The DOC initially calculated Defendant's good time eligibility at the rate of thirty days per month, but subsequently requested the State seek clarification of Defendant's good time credit eligibility. Defendant does not have a constitutionally protected liberty interest in unearned good time credits.  *See Brown v. Ulibarri*, 298 F. App'x. 746, 750 (10th Cir. 2008) (finding that the EMDA does not provide an inmate with a constitutionally protected liberty interest in unearned good time credits).  Although Defendant relies on our holding in *Brooks,* 118 N.M. at 720-21, 885 P.2d at 641-

---

legislative intent, the rule of lenity instructs we choose that which is favorable to the defendant.  We note that Defendant's construction of the EMDA is not possible even with application of the rule of lenity, which would not be used to reach a conclusion previously characterized as absurd.

42, for the proposition that an inmate's good time credits may not be forfeited nor his eligibility terminated without compliance with statutory due process procedures, that case does not assist Defendant here. Defendant does not allege that the initial good time credits he earned were revoked, or that the DOC arbitrarily terminated his good time credit eligibility. Rather, Defendant's eligibility was limited by the district court properly exercising its sentencing discretion after multiple hearings in which Defendant was present and heard. The limitation on Defendant's good time credit eligibility does not violate his due process rights.

## VI.     Conclusion

**{28}**     We hold that a district court may limit good time credit eligibility under the EMDA when sentencing a serious youthful offender to less than a life sentence upon a conviction for first degree murder. The district court's Order of Judgment and Sentence limiting Defendant to four days per month good time credit eligibility is affirmed.

**{29}     IT IS SO ORDERED.**

_____
**PATRICIO M. SERNA, Justice**

**WE CONCUR:**

_____
**CHARLES W. DANIELS, Chief Justice**

_____
**RICHARD C. BOSSON, Justice**

_____
**EDWARD L. CHÁVEZ, Justice**

**PETRA JIMENEZ MAES, Justice (concurring in part and dissenting in part)**

**MAES, Justice (concurring in part and dissenting in part).**

**{30}**     I agree with the majority that Anthony Tafoya (Defendant) did not waive his claim challenging the district court's sentencing jurisdiction and, therefore, I concur in part III of the majority opinion. However, I disagree with the majority that the district court has the discretion under the Earned Meritorious Deductions Act (EMDA), NMSA 1978, Section 33-2-34 (2006), to award good time credit eligibility to serious youthful offenders convicted of first degree murder. Accordingly, I respectfully dissent from parts IV and V of the majority opinion.

**{31}**     I begin my analysis with the EMDA, which establishes "a detailed set of guidelines for both the courts and the corrections department to administer in the ultimate determination of a prisoner's eligibility for good time reductions from his period of confinement." *State v. Rudolfo*, 2008-NMSC-036, ¶ 35, 144 N.M. 305, 187 P.3d 170. These guidelines can be

broken down into two general categories. "The first relates to the differing limits on the good time that may be awarded for various types of offenses of conviction, and the second relates to the respective roles of the judiciary and the executive in administering the various guidelines." *Id.*

**{32}**     Under the EMDA, the district court *has no discretion whatsoever* with respect to the good time credit eligibility of defendants convicted of a serious violent offense or a nonviolent offense, or defendants sentenced to serve a sentence of life imprisonment or death.   Section 33-2-34(G), (L)(3), (L)(4)(a)-(n); *see Rudolfo*, 2008-NMSC-036, ¶ 37 (holding that "the sentencing court has no discretion whatsoever" with respect to the good time credit eligibility of a defendant convicted of a serious violent offense); *State v. McDonald*, 2004-NMSC-033, ¶ 23, 136 N.M. 417, 99 P.3d 667 (holding that the district court lacks discretion to limit the good time credit eligibility of a defendant convicted of a nonviolent offense); *State v. Loretto*, 2006-NMCA-142, ¶ 9, 140 N.M. 705, 147 P.3d 1138 (same).  Under the plain language of the EMDA, such defendants are limited to a maximum of four, thirty, or zero days of good time credit eligibility per month, respectively, regardless of whether the defendant is an adult offender, a youthful offender, or a serious youthful offender.  Section 33-2-34(A)(1) (providing for a maximum of four days per month of good time credit eligibility for a serious violent offense); Section 33-2-34(A)(2) (providing for a maximum of thirty days per month of good time credit eligibility for a nonviolent offense); Section 33-2-34(G) ("The provisions of this section shall not be interpreted as providing eligibility to earn meritorious deductions from a sentence of life imprisonment or a sentence of death.").

**{33}**     The EMDA only grants the district court discretion in a very limited context.  Under Section 32-3-34(L)(o), fifteen enumerated offenses, which otherwise would be categorized as nonviolent offenses, may be treated as serious violent offenses "when the nature of the offense and the resulting harm are such that the court judges the crime to be a serious violent offense for the purpose of [the EMDA]."   "The courts *have no further role* in the administration of the EMDA or in determining the amount of good time that may be earned as to any convicted offense." *Rudolfo*, 2008-NMSC-036, ¶ 37 (emphasis added); *see also State v. Solano*, 2009-NMCA-098, ¶ 7, 146 N.M. 831, 215 P.3d 769 ("Our Supreme Court has explained that the judiciary has no role in the administration of the EMDA apart from exercising discretion to determine whether the nature of the offense and the resulting harm in a particular factual context justify categorizing the offense as a serious violent offense." (internal quotation marks and citation omitted)), *cert. denied*, 2009-NMCERT-007, 147 N.M. 363, 223 P.3d 360.  As this Court previously has observed, the computation of good time credits is exclusively an administrative responsibility, entrusted to the corrections department. *Rudolfo*, 2008-NMSC-036, ¶ 37; *State v. Aqui*, 104 N.M. 345, 348, 721 P.2d 771, 774 (1986), *limited in part on other grounds by Brooks v. Shanks*, 118 N.M. 716, 719-20, 885 P.2d 637, 640-41 (1994).

**{34}**     With this background in mind, I turn to the question presented on appeal, namely, whether the district court properly awarded Defendant four days of good time credit eligibility per month. Defendant was convicted as a serious youthful offender of first degree murder.  The crime of first degree murder is not listed as a serious violent offense in Section 33-2-34(L)(4)(a)-(n), or an offense which the district court may, in its discretion, treat as a serious violent offense under Section 32-3-34(L)(o). Defendant's good time credit eligibility

11

therefore depends upon whether the crime of first degree murder is a nonviolent offense, for which Defendant may earn a maximum of thirty days per month, or whether Defendant is serving a sentence of life imprisonment, which renders him ineligible to accrue any good time credits at all.

{35}    Like the majority, I have no trouble concluding that first degree murder is not a nonviolent offense for the purposes of the EMDA.  First degree murder is a capital felony "reserved for the most heinous and reprehensible [of killings], and therefore deserving of the most serious punishment under this state's law." *State v. Adonis*, 2008-NMSC-059, ¶ 15, 145 N.M. 102, 194 P.3d 717 (internal quotation marks and citation omitted); *see* NMSA 1978, § 30-2-1(A) (1994); NMSA 1978, § 31-18-14 (1993, prior to 2009 amendments). Classifying this inherently violent offense as a nonviolent offense under the EMDA "would be absurd, unreasonable, [and] contrary to the spirit of the statute." *State v. Smith*, 2004-NMSC-032, ¶ 10, 136 N.M. 372, 98 P.3d 1022.  Although the purpose of the EMDA is to foster "inmate discipline and cooperation," "the Legislature intended that only inmates convicted of noncapital crimes receive the benefit of good-time credits." *Compton v. Lytle*, 2003-NMSC-031, ¶¶ 19, 22, 134 N.M. 586, 81 P.3d 39.  For inmates convicted of capital crimes and sentenced to life imprisonment, the Legislature "explicitly concluded that the benefits of good-time credits has been outweighed by the benefits of imprisonment for a specific period of time." *Id.* ¶ 22.

{36}    In drafting the EMDA, it is unlikely that the Legislature "considered, or even foresaw" how the statute would apply to a serious youthful offender convicted of a capital crime, but sentenced to less than life imprisonment, the mandatory term for an adult. *State v. Trujillo*, 2002-NMSC-005, ¶ 9, 131 N.M. 709, 42 P.3d 814  (construing the term "life imprisonment" in Article VI, Section 2 of the New Mexico Constitution and Rule 12-102(A)(1) NMRA to include "serious youthful offender[s] convicted of first-degree murder but sentenced to less than life imprisonment").  In such a "rare case," *id.*, the term "life imprisonment" in Section 33-2-34(G) is ambiguous and, therefore, this Court must "resort to well-accepted rules of statutory construction, always striving to 'select the rationale that most likely accomplishes the legislative purpose—or best fills a void not addressed by the Legislature,'" *Wilson v. Denver*, 1998-NMSC-016, ¶ 36, 125 N.M. 308, 961 P.2d 153 (quoting *State v. Anaya*, 1997-NMSC-010, ¶ 29, 123 N.M. 14, 933 P.2d 223).  In light of the district court's limited role in administering the EMDA and the Legislature's intent to exclude defendants convicted of capital crimes from the purview of the statute, I would conclude that serious youthful offenders convicted of capital crimes, but sentenced to less than the mandatory term for an adult, receive a "sentence of life imprisonment" within the meaning of Section 33-2-34(G) and, therefore, are not "eligib[le] to earn meritorious deductions." Section 33-2-34(G).  Accordingly, I would reverse the judgment of the district court awarding Defendant four days of good time credit eligibility per month.

{37}    *Trujillo* does not dictate a contrary result.  In that case, although the defendant was a serious youthful offender sentenced to thirty years of imprisonment, the district court expressed its "intention that the Defendant be eligible for good time credit as to the sentence imposed." *Trujillo*, 2002-NMSC-005, ¶ 7 (internal quotation marks omitted).  On appeal to this Court, the defendant challenged the constitutionality of his sentence, claiming that "his thirty year sentence constitutes cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution and Article II, Section 13 of the New Mexico

Constitution." *Id.* ¶ 64. We noted that "[i]t is rare that a term of incarceration, 'which has been authorized by the Legislature, will be found to be excessively long or inherently cruel.'" *Id.* ¶ 66 (quoting *State v. Augustus*, 97 N.M. 100, 101, 637 P.2d 50, 51 (1981)). Because there was sufficient evidence to support the defendant's convictions, we concluded that "a thirty year sentence with the opportunity for good time was authorized by statute and not constitutionally disproportionate to the crimes." *Id.*

**{38}** In *Trujillo*, the defendant did not claim that his sentence was "illegal as not authorized under the applicable statute." *Id.* ¶ 64 n.4. Accordingly, this Court simply assumed that the defendant's sentence was authorized by law, without any analysis of the EMDA or the district court's authority to award good time credits. Under these circumstances, no reasonable inferences can be drawn regarding the scope of the EMDA or the Legislature's failure to amend the statute in response to our opinion. *See Martinez v. Chavez*, 2008-NMSC-021, ¶ 12, 144 N.M. 1, 183 P.3d 145 (filed 2007) ("'It is well established that cases are not authority for propositions not considered.'" (quoting *State v. Erickson K.*, 2002-NMCA-058, ¶ 20, 132 N.M. 258, 46 P.3d 1258)); *Garcia v. Schneider, Inc.*, 105 N.M. 234, 237, 731 P.2d 377, 380 (Ct. App. 1986) ("'[L]egislative inaction has been called a 'weak reed upon which to lean' and a 'poor beacon to follow' in construing a statute.'" (quoting 2A Norman J. Singer, *Sutherland Statutory Construction* § 49.10 (Sands 4th ed. 1984))).

**{39}** I recognize that the district court has broad discretion under the Criminal Sentencing Act (CSA), NMSA 1978, Sections 31-18-12 to -26 (1977, as amended through 2009), to fashion an appropriate sentence for serious youthful offenders. Indeed, in this case, the district court exercised its broad discretionary sentencing authority by sentencing Defendant to twenty, rather than thirty, years of imprisonment for the crime of first degree murder. However, good time credits "have no bearing upon the . . . original sentence imposed by the district court." *Aqui*, 104 N.M. at 348, 721 P.2d at 774. This is because such credits do not alter the original sentence but, rather, simply "affect[] the amount of time by which [a] defendant through his own good conduct could decrease his sentence." *Solano*, 2009-NMCA-098, ¶ 14 (internal quotation marks and citation omitted); *see also State v. Schoonmaker*, 2008-NMSC-010, ¶ 53, 143 N.M. 373, 176 P.3d 1105 ("Limiting a defendant's ability to earn meritorious deductions does not result in punishment beyond that which has been statutorily established for the offense."); *State v. Montoya*, 2005-NMCA-078, ¶ 14, 137 N.M. 713, 114 P.3d 393 (noting that "the effect of the EMDA is not to change anything with regard to any maximum sentence"). Because good time credits affect the *execution* of a defendant's sentence, rather than the *sentence itself*, the district court's broad discretionary sentencing authority under the CSA is inapplicable to the EMDA. *Aqui*, 104 N.M. at 348, 721 P.2d at 774. However, the district court may, in determining the appropriate sentence for a serious youthful offender convicted of a capital crime, consider the defendant's inability to shorten his or her original sentence by accruing good time credits under the EMDA.

**{40}** The majority may be correct that permitting the district court to grant good time credit eligibility to serious youthful offenders under the EMDA would further the public policy of rehabilitation. However, "it is the particular domain of the legislature, as the voice of the people, to make public policy. . . . Courts should make policy . . . only when the body politic has not spoken. . . ." *Benavidez v. Sierra Blanca Motors*, 122 N.M. 209, 214, 922

P.2d 1205, 1210 (1996) (quoting *Torres v. State*, 119 N.M. 609, 612, 894 P.2d 386, 389 (1995)). The Legislature has spoken regarding a capital defendant's good time credit eligibility under the EMDA and, therefore, this Court is powerless to "question the wisdom, policy, or justness of legislation." *Madrid v. St. Joseph Hosp.*, 1996-NMSC-064, ¶ 10, 122 N.M. 524, 928 P.2d 250; *see also Compton*, 2003-NMSC-031, ¶ 22.

**{41}** Defendant claims that any ambiguity in the EMDA must be construed in his favor pursuant to the rule of lenity and, therefore, he is entitled to thirty days of good time credit eligibility per month. The rule of "lenity is reserved for those situations in which a reasonable doubt persists about a statute's intended scope even *after* resort to the language and structure, legislative history, and motivating policies of the statute." *State v. Ogden*, 118 N.M. 234, 242, 880 P.2d 845, 853 (1994) (internal quotation marks and citation omitted). Neither the possibility of a narrower construction of a statute, nor a division of judicial authority, support the application of the rule of lenity. *Id.* at 242-43, 880 P.2d at 853-54. For the reasons previously explained, the EMDA's language and structure, as well as the motivating policies of the statute, support my conclusion that good time credit eligibility is limited to "inmates convicted of noncapital crimes." *Compton*, 2003-NMSC-031, ¶ 19. Accordingly, the rule of lenity is inapplicable to this case.

**{42}** In light of my conclusion that the district court exceeded its statutory authority to administer the EMDA, I need not reach Defendant's separation of powers claim. With respect to Defendant's equal protection claim, I agree with Defendant that all serious youthful offenders convicted of capital crimes are similarly situated under the EMDA and, therefore, must receive the same amount of good time credit eligibility per month. However, I would conclude that such serious youthful offenders' good time credit eligibility is limited to zero days under the EMDA and that any award in excess of zero days violates the statute. Lastly, Defendant's due process claim lacks merit because a criminal defendant does "not have a liberty interest in keeping erroneously granted good-time credits." *Compton*, 2003-NMSC-031, ¶ 24 (holding that the removal of erroneously granted good time credits does not violate a defendant's right to due process of law).

**{43}** As a serious youthful offender convicted of a capital crime, I believe that Defendant was ineligible to earn any good time credits under the EMDA. Accordingly, I respectfully dissent from parts IV and V the majority opinion.

**PETRA JIMENEZ MAES, Justice**

**Topic Index for *State v. Tafoya*, No. 30,396**

**AE**       **APPEAL AND ERROR**
AE-AR       Appellate Review
AE-RT       Right to Appeal

**CD**       **CHILDREN**
CD-RE       Rehabilitation

**CT**       **CONSTITUTIONAL LAW**
CT-DP     Due Process
CT-EP     Equal Protection
CT-SP     Separation of Powers

**CL**       **CRIMINAL LAW**
CL-CF     Capital Felony

**CA**       **CRIMINAL PROCEDURE**
CA-GT     Good Time
CA-PP     Plea and Plea Bargaining
CA-SN     Sentencing

**JD**       **JURISDICTION**
JD-SM     Subject Matter Jurisdiction

**ST**       **STATUTES**
ST-AP     Legislative Intent
ST-RC     Rules of Construction