The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

**Opinion Number:** _____

**Filing Date:** July 24, 2023

**NO. S-1-SC-39140**

**EVELYN NGUYEN,**

Petitioner-Respondent,

v.

**KHIEM BUI,**

Respondent-Petitioner.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Debra Ramirez, District Judge**

Mark Keller Law Office
Terri Keller
Albuquerque, NM

for Respondent-Petitioner

New Mexico Legal Aid, Inc.
Lucrecia R. Jaramillo
Jennifer Kletter
Albuquerque, NM

for Petitioner-Respondent

**OPINION**

**THOMSON, Justice.**

{1} We consider whether a hearing officer improperly denied a petition for an order of protection under the Family Violence Protection Act (FVPA), NMSA 1978, §§ 40-13-1 to -13 (1987, as amended through 2019), by requiring the petitioner to show she was in imminent danger of harm by the respondent, whom she alleged sexually assaulted her as a child. We affirm the Court of Appeals' memorandum opinion reversing the district court. We hold that the plain language of the FVPA does not require petitioners to provide a showing of imminent danger or injury in seeking an order of protection.

**I.      BACKGROUND**

**A.      Orders of Protection Under the FVPA**

{2} The FVPA allows victims of domestic abuse to petition the court for protective orders against their alleged abusers. Section 40-13-3(A). Domestic abuse, as relevant to this case, is "stalking or sexual assault whether committed by a household member or not." Section 40-13-2(D)(1). A victim of domestic abuse may obtain emergency protection from an alleged abuser through a temporary ex parte order by two processes. *See* §§ 40-13-3.2, -4. One process allows a law enforcement officer who has responded to a domestic violence incident to file a sworn written

statement with the district court setting forth the victim's need for an ex parte emergency order of protection. Section 40-13-3.2(A). If "the court finds reasonable grounds to believe that the alleged victim or the alleged victim's child is in immediate danger of domestic abuse," it may grant an emergency order of protection. *Id.* This emergency order expires within seventy-two hours or by "the end of the next judicial day," which provides the alleged victim time to seek a protective order. Section 40-13-3.2(E), (G).

{3}     Alternatively, a victim may file a petition for a domestic violence protection order directly. Section 40-13-4 (A)(1). In that event, "the court shall . . . immediately grant an ex parte temporary order of protection" if the specific facts shown by the petition give rise to "probable cause . . . that an act of domestic abuse has occurred." *Id.*

{4}     Subsequent to the filing of a petition or a statement by a law enforcement officer and any ex parte relief granted by the court, the merits of the petition or statement are considered on an expedited basis. The court must hold a hearing, addressing whether the temporary order should be continued, within ten days after granting the temporary order of protection under Section 40-13-4(A)(3) or within seventy-two hours or by "the end of the next judicial day" after granting the emergency order of protection under Section 40-13-3.2(E), (G). If that hearing

culminates in a "finding that domestic abuse has occurred or upon stipulation of the parties, the court *shall* enter an order of protection." Section 40-13-5(A) (emphasis added). With this framework in mind, we turn to the facts of this case.

**B.     Facts and Procedural History**

{5}     On February 4, 2021, eighteen-year-old Evelyn Nguyen (Petitioner) filed a Petition for Order of Protection from Domestic Abuse (Petition) under Section 40-13-3(A) alleging she was a victim of sexual assaults by Khiem Bui (Respondent) while she was a minor.[1] Based on the Petition, the district court found probable cause to believe that an act of domestic abuse had occurred, and it issued a temporary order of protection under Section 40-13-4. At the first hearing to determine whether the temporary order should be made permanent, Respondent verbally moved to dismiss the Petition. He argued that the Petition failed to show the order was necessary to prevent imminent harm to Petitioner. Respondent argued that Petitioner was not entitled to a permanent order because Petitioner did not allege that she was presently afraid of further abuse by Respondent. In support, he cited the time lapse between the alleged abuse and the filing, as well as Petitioner's exhibits showing that

---

[1]Though Mr. Bui petitioned for certiorari, we use "Petitioner" to refer to Ms. Nguyen as the individual who filed the petition for order of protection and "Respondent" to refer to Mr. Bui as the individual responding to the petition for the order of protection.

Respondent had not contacted Petitioner in almost two years and that his last contact with her was not of a threatening nature.

{6} The hearing officer ultimately denied the motion to dismiss, concluding that Petitioner's status as a minor at the time of the alleged abuse meant that she was not able to file the Petition on her own until the age of eighteen. He concluded, however, that Petitioner would need to demonstrate that Respondent posed ongoing and present danger, stating "I do agree with [Respondent's counsel] and her argument that [Petitioner] must demonstrate a need for the order of protection now, this being a few years after the alleged abuse."

{7} A hearing on the merits began with Petitioner testifying that she met Respondent in 2016, when she was about twelve years old and he was twenty. Over the course of the next two years, Respondent coerced her into a "sexual relationship" with him by paying special attention to her and telling her that no one else would love her if she did not have sex with him. On one occasion, when Respondent and Petitioner were both spending the night at the home of Petitioner's grandmother, Respondent entered Petitioner's bedroom and kissed, groped, and raped her. At other times, Respondent would sneak into the grandmother's home to "have sex" with Petitioner if she was staying there. She testified he raped her an "uncountable" number of times at her home, in his car, and at a church retreat. Petitioner alleges

4

that he proposed to her when she was fourteen years old and emotionally manipulated her by "breaking up with her and cutting off contact to force [her] to feel sad and to come back to him." Petitioner, in her own words, "removed [her]self from the situation" in the fall of 2018 and blocked Respondent on all social media accounts. The last time Petitioner saw Respondent was at church on December 24, 2019, but the two did not speak. Immediately after church, Respondent sent Petitioner a message on her new Instagram account, but the conversation was short, and Petitioner made clear that she did not want to speak to him anymore.

{8} Petitioner told her parents about the alleged abuse in August 2020 and began therapy. Petitioner filed the Petition in February 2021 after turning eighteen. Petitioner wrote therein that she had been afraid to tell anyone about the alleged abuse because Respondent threatened her and that she was "afraid of retaliation." She added, "[Respondent] told [her] that no one else would ever love [her]," and she was "really afraid of [Respondent]."

{9} When questioned about the timing of the Petition, Petitioner explained that she was diagnosed with post-traumatic stress disorder (PTSD) due to the trauma associated with the alleged sexual assaults, and her therapist suggested that the domestic violence order of protection would help her PTSD symptoms because she would not have to worry about seeing Respondent anymore. She testified that her

5

PTSD and her fear of even seeing him has affected her everyday life, including in her workplace. In addition, she waited to file the Petition until she turned eighteen to be able to do it on her own.

{10}  The hearing officer found that Respondent had not contacted Petitioner in the last fourteen months and that any contact that did occur was innocuous. He stated on the record, "not to minimize what happened in the past, and I'm not doing that, but . . . I don't see . . . the immediacy of the need for an order of protection." Then, in contrast to his dismissal, the hearing officer warned Respondent to stay away from Petitioner or "she can file another petition and we can start over." Accordingly, the hearing officer denied the Petition, concluding, "The Petitioner was unable to meet her burden of proof."

{11}  Petitioner filed Objections to the hearing officer's order, arguing that Section 40-13-5 of the FVPA does not include any requirement for a showing of immediate need for the protection order, that it does not include time frames in which a petitioner must apply for a domestic violence protection order, and that victims come to terms with their trauma at different times and in different ways. The district court reviewed the record and Objections, denied the Objections, and affirmed and adopted the hearing officer's Order of Dismissal.

{12} The Court of Appeals reversed the district court in a memorandum opinion, concluding that the district court erred "by requiring Petitioner to establish 'immediacy'" when seeking a domestic violence protection order under Section 40-13-5 of the FVPA. *Nguyen v. Bui*, A-1-CA-39647, mem. op. ¶ 2 (N.M. Ct. App. Nov. 23, 2021) (nonprecedential). It explained that there was no language in the statute imposing a temporal limitation after alleged abuse and that the statute permits granting a domestic violence protection order for a victim of criminal sexual penetration for any length of time, including the victim's lifetime. *Id.*

{13} Respondent appealed. This Court granted certiorari on the question whether the Court of Appeals misinterpreted the FVPA when it concluded that the FVPA only requires a finding that an act of domestic abuse occurred, even if there has not been any evidence that the petitioner is currently in imminent danger. We affirm the Court of Appeals, holding the plain language of Section 40-13-5 requires only a finding by the court that domestic abuse has occurred.

**II. DISCUSSION**

**A. Section 40-13-5 of the FVPA Contains No Requirement That a Petitioner Show a Need for a Domestic Violence Protection Order**

{14} The issue presented is one of statutory interpretation, which this Court reviews de novo. *Cooper v. Chevron U.S.A., Inc.*, 2002-NMSC-020, ¶ 16, 132 N.M. 382, 49

7

P.3d 61 ("The meaning of language used in a statute is a question of law that we review de novo.").[2]

{15}    "In construing a statute, we must ascertain and give effect to the intent of the Legislature. To accomplish this, we apply the plain meaning of the statute unless the language is doubtful, ambiguous, or an adherence to the literal use of the words would lead to injustice, absurdity or contradiction." *State v. Tafoya,* 2010-NMSC-019, ¶ 10, 148 N.M. 391, 237 P.3d 693 (internal quotation marks and citations omitted). Analysis of Section 40-13-5 begins and ends with its plain language.

{16}    Section 40-13-5(A) provides, "Upon a finding that domestic abuse has occurred or upon stipulation of the parties, the court *shall* enter an order of protection" (emphasis added). The statute is clear; the only predicate finding required is that domestic abuse has occurred. *See Tafoya*, 2010-NMSC-019, ¶ 10. If the court finds that domestic abuse has occurred, it "shall" enter the order of protection. Section 40-13-5(A). There is no language that indicates that a petition

---

[2]We note that Respondent recites the issue in his brief in chief as "'did the district court abuse its discretion' in interpreting a requirement that a Petitioner demonstrate a need . . . for the protection of the Court." However, the question granted on certiorari does not involve an abuse of discretion standard, and there are no allegations that the type of error that would require abuse of discretion review occurred in this case.

must state why a petitioner needs the order, or even language that requires proof of a petitioner's need for the order. *See* § 40-13-5.

{17}   We recognize that in some states, a petitioner must both fall into a class of people the statute seeks to protect (in this case a victim of domestic abuse) *and* be in imminent fear of bodily injury. For example, a statute in Oregon's Family Abuse Prevention Act imposes such a requirement.[3] In New Mexico, however, the FVPA statute relies on a showing of past or present domestic abuse, and it does not require a showing of a threat of future harm. The only requirement under Section 40-13-5 is proof that "domestic abuse has occurred." Section 40-13-5(A). This case contains serious allegations that Petitioner was the victim of sexual assault. *See* § 40-13-2(D)(1). As such, Section 40-13-5 is explicitly clear: upon this finding, the court shall issue a protective order. Section 40-13-5 imposes no temporal qualifications.

{18}   Failing to identify any ambiguity in the statute, Respondent invites us to consider legislative history, the context of the statute in relation to other statutes

---

[3]*See* Or. Rev. Stat. Ann. § 107.710 (West 2015) ("Any person who has been the victim of abuse within the preceding 180 days may petition the circuit court for relief under ORS 107.700 to 107.735, *if the person is in imminent danger of further abuse from the abuser*. The person may seek relief by filing a petition with the circuit court alleging that the person is in imminent danger of abuse from the respondent, that the person has been the victim of abuse committed by the respondent within the 180 days preceding the filing of the petition and particularly describing the nature of the abuse and the dates thereof." (emphasis added)).

around it, the statute in comparison to the civil restraining order, and public policy implications. In addition, he presents information contained on the district court's website. Such extrinsic evidence is only considered when the statute is ambiguous or "[w]hen application of the plain meaning of the statute fails to result in a reasonable or just conclusion." *Tafoya*, 2010-NMSC-019, ¶ 10. Therefore, the statute must be read and given effect "as it is written by the Legislature, not as the court may think it should be or would have been written if the Legislature had envisaged all the problems and complications which might arise in the course of its administration." *State ex rel. Helman v. Gallegos*, 1994-NMSC-023, ¶ 22, 117 N.M. 346, 871 P.2d 1352 (internal quotation marks omitted) (quoting *Perea v. Baca*, 1980-NMSC-079, ¶ 22, 94 N.M. 624, 614 P.2d 541). Thus, the hearing officer erred in adding a requirement that Petitioner must show immediacy of harm upon proving domestic abuse. The district court erred in accepting this conclusion of law.

**B.      Respondent's Constitutional Arguments Are Undeveloped**

{19}      Respondent makes an incomplete and unsupported argument that restraining orders are unconstitutional, as they "interfere with the constitutional right of free movement and travel." He notes that orders of protection affect government employment, raise potential deportation issues, upset custodial issues when children are involved, and impose criminal consequences if violated. First, Respondent cites

no authority from any jurisdiction to support his argument. We therefore assume that no authority exists. *See In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 ("We assume where arguments in briefs are unsupported by cited authority [that] counsel . . . was unable to find any supporting authority."). "Issues raised in appellate briefs which are unsupported by cited authority will not be reviewed by us on appeal." *Id.*

{20}    Second, Respondent's constitutional argument also lacks any principled analysis. *Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 (explaining that the appellate court does not review unclear or undeveloped arguments). This Court will, on rare occasion, address issues that are undeveloped or not raised at all by the parties. *State v. Arrendondo*, 2012-NMSC-013, ¶ 20, 278 P.3d 517 (recognizing the "Court's inherent authority to raise an issue sua sponte when it is necessary to protect a party's fundamental rights"). However, as a general rule, this Court will not "promulgate case law based on our own speculation rather than the parties' carefully considered arguments." *Elane Photography*, 2013-NMSC-040, ¶ 70. Accordingly, Respondent's constitutional arguments do not alter our analysis.

11

## III.  CONCLUSION

{21}  We hold that Section 40-13-5 does not require a showing of immediate need for a domestic violence order of protection. A petitioner must show only that domestic abuse occurred (or there must be a stipulation that domestic abuse occurred), and the district court "shall" grant the order. Section 40-13-5(A). Accordingly, the district court erred by dismissing Petitioner's petition, and we affirm the Court of Appeals' reversal. Because the hearing officer dismissed the petition prior to making a finding about whether domestic abuse occurred, we remand to the district court for a new hearing on the issue of continuing the order of protection. We further order Petitioner's temporary order of protection to remain in place pending the order of protection hearing.

{22}  **IT IS SO ORDERED.**

_____

**DAVID K. THOMSON, Justice**

**WE CONCUR:**

_____

**C. SHANNON BACON, Chief Justice**

_____

**MICHAEL E. VIGIL, Justice**

_____

**JULIE J. VARGAS, Justice**


_____

**BRIANA H. ZAMORA, Justice**